**469]** *Lessee of Daniel Burgett v. Elizabeth Burgett.

*Statute of Frauds—Creditors—Deeds.*

A voluntary conveyance, made without consideration, and for the purpose of defrauding creditors, is not void, except against creditors or subsequent purchasers.

This was an action of injectment, tried at the July term, 1824, in the county of Butler.

The plaintiff gave in evidence a patent from the United States to Henry Burgett, for the land in question, and a deed for the same land from Henry Burgett to the lessor of the plaintiff. The defendant then introduced witnesses to prove that the deed from Henry Burgett to Daniel Burgett was wholly without consideration, and intended to defraud creditors, and that Daniel Burgett had notice of that intention. It was admitted at the trial, that John Burgett, late husband of the defendant, was a creditor of Henry at the time of the conveyance to Daniel; that he died in pos-

session of the premises; that the defendant, his widow, had continued in possession ever since, and that John was in possession when the deed was made to Daniel.

WOOD, for the plaintiff, contended:

That the statute of this state, for the prevention of frauds and perjuries, although different in terms, ought to receive the same construction as had been given to 13 and 27 Eliz.

SARGEANT and DUNLAVY contended for the defendant:

That the statute must receive a literal construction, and that if the deed was made with an intent to defraud creditors, it was, in the language of the statute, "utterly void and of no effect," and that strangers, as well as creditors, might take advantage of it.

The judges who tried the cause determined to reserve the question of construction for the consideration of all the judges, at the special session next to be holden at Columbus, and with that view instructed the jury in accordance with the literal import of the words of the statute, that if they found the deed from Henry to Daniel Burgett to be without consideration, and intended to defraud creditors, it was void and of no effect, and would not entitle the plaintiff to a verdict.

*The jury found for the defendant, and on a motion for a new [470 trial, on the ground of misdirection, the question was reserved for decision at the special session.

WOOD, in support of the motion:

The principal question presented for the consideration of the court on the present motion is, whether a deed made or obtained with intent to defraud creditors, or to defraud or deceive purchasers, is void, *ab initio,* under the second section of the statute against frauds and perjuries, or so far only as it shall operate against the rights of *bona fide* creditors or purchasers. In other words, would the deed from Henry Burgett to Daniel Burgett, the plaintiff in this suit, though made with the intent above mentioned, be utterly void, so as to convey no title to the plaintiff against a mere trespasser, without a shadow of title?

It is conceived that the object, and the only object of the legislature, in the enactment of the second section of the statute above referred to, was the protection of the rights of creditors and pur-

chasers. If such be the fact, the Supreme Court were bound so to administer the laws as to give effect to that object, and to that only. This could only be effected by adopting that construction of the statute which would sustain the deed under which Daniel Burgett claimed possession of the premises in question, except so far as it might operate against the rights of *bona fide* creditors or purchasers of, or from Henry Burgett.

The legislature intended to guard either against the intent to defraud, or against the effect of such intent. That the legislature did not intend to guard against the intent merely will appear sufficiently evident on a moment's reflection.

The judicial tribunals of our country are instituted for the administration, not of the moral, but municipal law. Of the secret views or intentions of men, courts of laws will take no notice, unless those views or intentions have been carried into effect, and have an influence on the welfare of others. The acts of men are the only *indicia* of their intentions which courts of justice will regard, and their intentions are scrutinized for the purpose only of ascertaining the character of those acts. It is for the regulation of their conduct alone, as members of civil society, that laws are 471] *made and courts instituted. No legislature have ever enacted, no judicial tribunal have ever enforced, a penalty against the mere intent to commit an offense. A violation of the duties which one man owes another may be punished by the community to which the parties belong. But a mere violation of the understanding, which has not been carried into effect, to the injury of any person, never has been, and, it is presumed, never will be, punished by municipal law.

To punish those violations of the duties which man owes to his Creator, in contradistinction to those which he owes his fellow-citizens, is left for that omniscience, which can not err, and that omnipotence, which can not be defeated. If, then, the legislature did not intend to provide against the mere intent to defraud, their object, and only object, must have been to provide against the effects of such intent; to prevent a debtor, who had obtained credit by virtue of the possession and ostensible ownership of property, from avoiding by a fraudulent transfer the payment of debts contracted on the credit of such property; to prevent a purchaser, without consideration, and with intent to defraud the creditors or purchasers of the grantor, from defeating the claim of

a subsequent purchaser for valuable consideration. Agreeably to the construction adopted by the Supreme Court, the deed from Henry Burgett to Daniel Burgett, if made or obtained with intent to defraud the creditors of Henry Burgett, is utterly void, not only as to those creditors, but, *ab initio*, so as to pass no interest to the grantee against the grantor. The term "made," used in the statute, undoubtedly refers to the grantor; and the word "obtained," to the grantee. The intent, then, mentioned in the statute, may be limited to the grantor or grantee. We would beg leave, then, to suppose for a moment, that Henry Burgett, in making the deed under which Daniel Burgett claims possession of the land in question, intended to defraud his creditors—that Daniel Burgett was ignorant of that intent—that the creditors of Henry Burgett were all satisfied without recourse to the land, and that Daniel Burgett brought his action of ejectment against Henry Burgett, to obtain possession of the land. Could Henry Burgett defend himself by saying: True it is, I executed the deed, under which Daniel Burgett, the plaintiff, *claims possession, but I did it [472 with the view of defrauding my creditors? Here is a case coming clearly within the language of the statute, but we presume that no judicial tribunal, in the exercise of their intellectual faculties, would declare a deed, under these circumstances, void. To obviate this difficulty, it may be said that no man can deny his own deed.

But if we are to adhere so rigidly to the statute as the construction, which the court, in their charge to the jury adopted, would intimate, we are not at liberty to regard anything but the express declarations of the legislature. Agreeably to that construction a deed is void if made with intent to defraud creditors or purchasers in all cases, and under all circumstances. It is admitted that if the will of the legislature be clearly ascertained, a court of law are bound to carry it into effect, however inexpedient or injudicious they may deem it. But from the imperfection that attends language, as well as everything else of human origin, the terms employed to express the intention of the legislature may comprise a variety of cases, which the legislature never contemplated. If, from a reference to the subject matter, the reason and spirit of the law, it may be fairly presumed that the case under contemplation does not come within the object of the law, a judicial tribunal will not extend the provisions of the law to that case. It might with equal propriety usurp legislative power, and

·exercise both legislative and judicial functions. *Cessante ratione ipsa cessat lex*, is a maxim universally adhered to in the construction and application of laws. But it may be remarked that in the ·case supposed, Daniel Burgett is represented as ignorant of the fraudulent intent. This, so far as regards the construction of the statute is conceived to be a matter perfectly immaterial. A liberal construction of one part of a statute is fruitless, if rendered ineffectual by a strict adherence to the precise language of another part without regard to the object of the law. But admit, in the case before supposed, that Daniel Burgett was aware of the intent to defraud. Will this court say that the object of the statute would be effected by vacating the deed at the suggestion of Henry Burgett, the grantor and defendant? With him the fraud originated. This court would, it is conceived, *say to him : You shall not take advantage of your own wrong; you shall not deny your own deed. If you have fallen in the toils you spread for your neighbor, we will not aid you in getting out. The object of the statute was not the protection of the parties to the fraud but of *bona fide* creditors and purchasers, and the court will extend the provisions of the statute no farther than the accomplishment ·of that object requires. It is an established rule in the administration of justice to assist neither party to an illegal contract to enforce or rescind that contract. If a feoffment be made in con·sideration to do an act *malum in se*, the estate of the feoffee is absolute, and a bond made on such condition is void, for the estate settled in the feoffee shall not be defeated nor shall a bond be forfeited for the forbearance of such action. But if an estate be to arise upon a condition precedent, that is illegal; it can never have ·effect. The construction for which we contend, is that put upon 13 and 27 Elizabeth, the object of which we conceive to be the same with that of the second section of the statute against frauds and perjuries enacted by the legislature of Ohio. The statute of New York, enacted for the same purpose, has received the same construction. If such, then, was the object of the legislature, the Supreme Court were bound to adjudge conveyances void for such purpose and to such extent only as might be necessary to ·accomplish that object. Such was the rule adopted by the English courts in their adjudications under 13 and 27 Elizabeth. Burrell's ·case, Hop. 166, and Thorne v. Newman, 2 Chan. Rep. 37.

The principle adopted in those cases, it is believed, was never

departed from.    But it may be replied, that judicial tribunals are
bound by the express declaration of the legislature, however inex-
pedient they may deem the provisions they have enacted.    That
.if the legislature have declared deeds made or obtained with in-
tent to defraud creditors or purchasers utterly void, courts of law
are bound to pronounce them void in all cases, and under all cir-
cumstances.

When the legislature have clearly expressed their will upon any
subject, courts of law are bound to carry their will into effect.
But from the undeterminable character of language, and the im-
perfect manner in which it presents the operations of the human
intellect, it frequently becomes *necessary, in ascertaining [474
the object of the legislature, to resort to other circumstances than
the language which the legislature may have chosen to convey a
knowledge of their object to the community, and it is to this ob-
ject, the purpose which existed in the breast of the legislature,
that courts of justice are bound to give effect.

If it can be fairly presumed that the object, and the only object
of the legislature, was the protection of the rights of creditors and
purchasers, then the Supreme Court were bound so to state the law
in their charge to the jury as to give effect to that object, and that
object only, however broad or extensive the language of the stat-
ute might be.

Agreeably to the position advanced have been the uniform de-
cisions of judicial tribunals.

By 13 Elizabeth, c. 13, it is provided that all leases, gifts,
grants, etc., made by any persons or corporations therein men-
tioned, contrary to the tenor of that act, should be utterly void
and of no effect to all intents, constructions, and purposes.    Yet
it has been uniformly adjudged, under that statute, that the lease
made by a dean and chapter against the said statute shall not be
avoided, nor any covenants therein contained, during the life and
continuance of the dean that made the lease.    If, then, we have
not been mistaken in supposing that the object of the statute was
the protection of the rights of creditors or purchasers, and that the
court were bound to effect that object, and that only, it remains
to inquire whether the construction put upon the statute, by the
court in their charge to the jury, would effect that object.    It is
conceived that to enable an individual to take advantage of the
statute, it must not only appear that he is a creditor or purchaser

479

of the grantor of the deed under which the adverse party claims possession, but he must exhibit a claim to the specific property in question.

Until this claim is regularly exhibited to the court for their adjudication, his character as creditor or purchaser must be unknown, and the court will never institute an investigation which must be fruitless, nor make a decision which can never be carried into effect. Will a judicial tribunal, at the suggestion of a defendant, a mere trespasser, who exhibits no shadow of title to the 475] property in question, *institute an inquiry by virtue of a statute whose object is the ptotection of creditors and purchasers, into the intent with which the deed was made under which the plaintiff claims possession? Such an investigation would be entirely fruitless. Admit for a moment that the deed from Henry Burgett to Daniel Burgett was made to defraud the creditors of Henry Burgett, and that Daniel Burgett was aware of the intent—that Daniel Burgett brought his suit against a mere trespasser in possession. Would the court, with the view to protect the creditors or purchasers of Henry Burgett, at the suggestion of the defendant, institute an inquiry into the circumstances under which the deed from Henry Burgett to Daniel Burgett was executed. No creditor or purchaser of Henry Burgett could possibly be benefited by such investigation. The court could pronounce no decision on the subject which would operate in favor of creditors or purchasers, if such there were. That the decision of the court may operate on the claim of any individual, he must be a party before the court, and his claim regularly presented for their adjudication. The court, it is conceived, erred in going into the investigation relative to the intent with which the deed from Henry Burgett to Daniel Burgett, the plaintiff, was made, the defendant setting up no title to the premises in question in the character of a creditor or purchaser of or from Henry Burgett. Under no other clrcumstances could the court institute an investigation into the circumstances under which the deed, by which the plaintiff claims, was executed without an entire departure from the object of the law.

Admitting for a moment that the defendant, in the case before the court, was a creditor of Henry Burgett, and that the deed under which the plaintiff claims was made with the view of defrauding her as such, the court would not be justified in extending the

480

provision of the statute to her unless she set up a title to the premises in question, in the character of a creditor or purchaser. She would be no more entitled to the benefit of the statute than any other trespasser. If the premises in question, by virtue of an execution issued on a judgment against Henry Burgett, had been sold, and the defendant had become the purchaser, and the plaintiff had sought to obtain possession, we *conceive the court might, [476 with propriety, at the suggestion of the defendant, inquire into the circumstances under which the deed from Henry Burgett to Daniel Burgett was executed. In such cases, and in such only, do we conceive the court can with propriety inquire into the intent with which the deed under which the plaintiff claims was made. Upon these principles we rest our motion for a new trial.

See 4 Bac. Ab., title Leases, 118, and cases there cited; 2 Ch. Rep. 37:

DUNLAVY, for defendant:

The true question in this case, if I properly understand it, is this: Is a deed of conveyance made to defraud creditors, etc., absolutely void, or is it conditionally so, or void only as to creditors and *bona fide* purchasers?

I contend that such a deed is absolutely void without any qualification, reservation, or conditon whatever; first, because the statute on which the question depends, is positive and peremptory, "shall be utterly void." No language can be more plain, nor can any philologist, judge, or chancellor discover anything in the statute itself, I speak of the second section, that can justify him in giving it a meaning that would lead to, or justify any condition, proviso, or reservation. Statutes can only admit of construction where the cause is doubtful, or where there are various matters treated of therein, or others on the same subject matter. In this case, it becomes lawful, and even necessary, so to construe the statute that the whole shall have its due effect, and that the intention of the legislature should not be frustrated. But here is a simple statute made on one subject, couched in terms as strong and as plain as the English language can furnish; and what are those terms? That every gift, grant, or conveyance of lands, etc., shall be deemed utterly void and of no effect. Now is not this language too plain to be misunderstood, and at the same time too strong to be shaken by any court or judge; nor could it ever have entered into the

mind of any person to give it a construction different from the plain and literal meaning, except he was biased by preconceived opinions, or by inadvertently concluding that our statute, being made on the same subject as the British statutes, 13 and 27 Eliz., 477] must necessarily, in all *cases, have the same construction; nor can anything be drawn from the construction given to statutes on this subject in other states or countries. The above-cited British statutes, although on the same subject, appear to be very different in many respects. These are careful of the rights of creditors, and of *bona fide* purchasers, and only make fraudulent conveyances void as to these descriptions of persons. The statute of New York, as it appears from the declaration of Judge Spencer, and in which the whole court concurred, contains the same provisions as those of the British statutes. There can nothing, therefore, be drawn from the decisions of that learned court unfavorable to the position I am endeavoring to establish. But it will probably be contended, that if the doctrine I contend for, should obtain, very serious evils must follow. For instance, that any trespasser, who shall get possession of land, may hold it against all the world, as the fraudulent grantee can not contend with him, as his title is void, and the grantor can not as he has conveyed all his right. Another objection will perhaps be raised, that if the construction should be given the statute I contend for, that a man may avoid his own deed. For if a fraudulent conveyance shall be declared void to all intents and purposes, the maker thereof may, at any time he thinks proper, avoid the same. But these objections will, on examination, be found more specious than solid. For, in the first place, it is impossible that a mere trespasser should get possession of land, under such circumstances as that no remedy could be had against him, but what is founded on title; and as to the other case, it could not possibly happen, because a man is estopped by his own deed, nor can he under any circumstances avoid it, except in cases where he shall charge and prove duress, evident mistake, or fraud in another person. But it does not lie in the power of the court to avoid or annul the force of the statute, whatever consequences may follow. All they can do is to declare the law, and as to the consequences, let the legislature see to these. It will also, probably, be alleged that the court have heretofore given a construction to the statute varied from the one I contend for, and that to invade or depart from that decision will produce

greater evils than to persevere in the error.  If, indeed, the court have heretofore *decided incorrectly, it is high time that [478 they should retrace their steps, and put the law, which they are bound to support and pursue, on its proper basis.  It is, I presume, the first time the question has ever been brought directly before the court, and if in adjudications heretofore made, the statute has been inadvertently overreached, it is no reason why the error should be persevered in, when the matter has been fairly put in issue and clearly understood.  But if the court have any doubt on this subject, there are, in my opinion, many things that ought to weigh with them in making up their judgment, and deserve a due consideration, before the court decide that the plain and literal sense of the statute is to be disregarded.  It is only by taking the statute in the sense I contend for, that it can ever have any general beneficial effect.  Fraudulent conveyances are most commonly made secretly, or at least under such circumstances as the parties concerned calculate that the real state of the case will remain unknown to all but themselves.  To unravel and set aside fraudulent transactions of this kind has long engaged the learning and skill of judges and chancellors, but it is to be lamented that all their art and labor have measurably proved abortive.  Now the difficulty of developing fraudulent transactions will be greatly increased, if not become insurmountable, when it becomes necessary to pursue the property in the hands of a second purchaser, as it will generally be impossible to bring home to him the necessary notice. Hence, I presume, that on examination an instance will scarcely be found, where a creditor has been able to bring home fraud to a second purchaser, except purchasers *lis pendens*.  I trust, therefore, both the letter of the statute, the object of the legislature in passing the law, the mischief to be avoided, and the relief intended to be afforded to innocent persons, will concur to induce the court to pronounce that a fraudulent deed is void.  See 18 Johns. 515, 525; Cow. 434.

Opinion of the court, by Judge BURNET:

The question of greatest difficulty in this case arises from the fact, that our statute, the second section of which embodies, in part, the substance of the second section of the 13th, and the second section of 27 Elizabeth, contains no express words *confin- [479 ing its operation to creditors, nor any proviso in favor of pur-

chasers for a valuable consideration and *bona fide*. The section is in these words: "That every gift, grant, or conveyance of lands, tenements, hereditaments, rents, goods, or chattels, and every bond, judgment, or execution, made or obtained to defraud creditors of their just and lawful debts, or damages, or to defräud or deceive the person or persons who shall purchase such lands, tenements, hereditaments, rents, goods; or chattels, shall be deemed utterly void and of no effect."

The statute contains no other provision bearing on the subject.

It will be recollected that the statutes of 13 and 27 Elizabeth not only contain provisos, that restrain them from operating against conveyances made for a good consideration and *bona fide*, but also restrictions, by which conveyances intended to defraud creditors and purchasers are made void only as against the persons intended to be defrauded.

If the language of our statute is to receive a literal construction, the direction given to the jury was correct, but a majority of the court are of opinion that it ought not to receive such an interpretation, as it would lead to consequences not contemplated by the legislature, and would, in part, defeat the intent of the law, which was, not only to prevent the effect of fraudulent conveyances, but to remove, as far as possible, the inducement to attempt them. The literal meaning of the language used, would render the covenous deed void, not only as to the persons intended to be defrauded, but also as to strangers, and even the grantor himself. If the deed be utterly void and of no effect, in the literal acceptation of those terms, the title must remain in the grantor, and he may, at any time, reclaim the property, by proving his own fraud. The consequences of such a doctrine, and the impunity which it offers to those who may attempt to evade the statute, could not have been contemplated by those who framed the law, nor do we believe the rules prescribed for construing statutes require, or admit of such an interpretation.

It frequently becomes the duty of courts, in order to give effect to the manifest intention of the statute, to restrain, or qualify, or 480] enlarge the ordinary meaning of the words that *are used. It is said that the power of construing a statute is in the judges, who have authority over all laws, and more especially over statutes, to mold them, according to reason and conscience, to the best

and truest use. That the learned sense entertained of the statutes 13 and 27 Elizabeth is, that they render conveyance void, to such purposes, and to such extent, as may be necessary to accomplish their object, and that the construction adopted has been the *rei gerandæ aptior*. Roberts frau: cont. 381; 4 Bac., title Statute, H. S. 1.

The intention of the law-makers may be collected from the cause, or necessity of the act, and statutes are sometimes construed contrary to the literal meaning of the words. It has been decided, that a thing within the letter, was not within the statute, unless within its intention. The letter is sometimes restrained, sometimes enlarged, and sometimes the construction is contrary to the letter. 4 Bac., title Statute, J. S. 38, 45, 50. The object of our statute appears, from its title, to be the prevention of frauds and perjuries, and although it is said, that the title forms no part of the act (1 Ld. Raym. 77), yet the reason of this dictum seems to be the practice of Parliament, by which the title is prefixed to the statute, at the discretion of the clerk of the house, in which the bill originated, but such is not the practice with us. The title is framed in the same manner as the bill, and is sanctioned by the vote of both branches of the legislature; we may, therefore, consider it as explanatory of the object of the law, and it may safely be said that the object disclosed by the title in this case, does not render it necessary to treat a fraudulent deed as utterly void against the grantor, or against strangers who have no interest, claim, or demand, either on the property or on him who has conveyed it. The same inference may be drawn from the language of the section which declares the conveyance, etc., made to defraud *creditors or purchasers,* to be utterly void. Why should it be void? Because it operates as a fraud on the *persons named,* not on strangers, who have no interest in the transaction, nor on the maker of the deed, who is the principal or only agent in the fraud. The intention of the statute, then, was to protect creditors and purchasers, and, to effect this purpose, it can not be necessary to extend it to any other description of persons. The rights of this defendant are not affected by the deed to Elizabeth *Burgett—it was not made to defraud her—she had no in- [481 terest in the transaction—she was neither a creditor nor a purchaser, and consequently not one of those for whose protection the statute was made. Every statute should be construed with a

Lessee of Burgett *v.* Burgett.

reference to its object, and the will of the law-maker is best promoted by such a construction as secures that object, and excludes every other.

The rules laid down in Heydon's case, 3 Rep. 7, which direct a reference to the common law, before the statute—the mischief complained of—the remedy provided, and the true reason of that remedy, are sufficient to authorize the construction claimed on the part of the plaintiff.

Although the principles of common law are strong against fraud in every shape, yet we find it decided in Twine's case, 3 Rep. 83, that an estate made by fraud, can only be avoided at common law by him who had prior right, title, interest, debt, or demand, and not by one whose right or demand was more *puisne* or subsequent to the conveyance. The common law, also, of which the statute is said to be declarative, professed to protect only creditors, purchasers, and those having right. It did not extend its care to trespassers, or to persons pretending to claim without right, or to those who might be caught in their own toils. It was moreover considered, in reference to those for whom it professed to give a remedy, too tender in presuming fraud from circumstance, and too rigid in requiring proof.

This was the scope and extent of the common law, and it shows that the mischief to be remedied by the statute, was the difficulty of proof, and the frauds that might be successfully practiced on persons having right, title, interest, debt, or demand, accruing after the conveyance. Neither the condition of strangers, or persons without right or demand, nor the safety of the fraudulent grantor, entered into the consideration of the common law, nor did their case constitute any part of the mischief to be remedied. Hence we may conclude that the statute was intended, exclusively, for the benefit of creditors and purchasers, and was made to increase the facility of avoiding frauds, on such as were creditors and purchasers prior to the conveyance, and to extend the relief to those whose rights might accrue after the conveyance, consequently 482] the interest of the fraudulent *grantor, and the pretenses of those who have no right, were not within the mischief, and, therefore, not entitled to the remedy.

It being the duty of courts to give such a construction to statutes, as will suppress the mischief and advance the remedy, we are constrained to say that our statute, as it applies to the case

Lessee of Burgett *v.* Burgett.

before us must receive the same construction as though it had contained the restriction and proviso found in those of Elizabeth, nor do we believe that in so deciding, we enlarge the rules, or extend the license given for the construction of statutes. Should a case occur in which the intention of the legislature is doubtful, the literal and obvious interpretation of the terms ought to be adhered to; but, in the case before us, the majority of the court entertain no doubt. The case of the defendant is not within the mischief, nor necessarily within the terms of the remedy. It being decided that the deed in question is void only as to creditors and purchasers, and the defendant being neither a creditor nor a purchaser, it follows that she has no right to impeach it.

On the authority of Anderson *v.* Roberts, 18 Johns. 515, and the cases there cited, we consider this deed as voidable only by the parties aggrieved. It remains doubtful whether the creditors of Henry Burgett will find it necessary to contest it. Their debts may be provided for in a different way, and should that be the case, for what purpose shall the deed be declared void? Shall the title be considered as remaining in the fraudulent grantor, or in perpetual abeyance, or extinguished, so as to protect the defendant by the mere circumstance of occupancy. On the principle contended for, we do not see how these consequences are all to be avoided. If the deed be literally a nullity, the parties stand as though it had never been executed; the title remains in Henry Burgett, and he may show his own fraud to avoid his deed. If, on the other hand, the title has passed from him without vesting in his grantee, and the creditors should be otherwise provided for, it is either extinguished, or in perpetual abeyance, so that no person can question the right of him who may happen to be in possession, though without a color of title. Such a state of things, we are confident, the legislature did not design to *produce— [483 it was neither the intention of their act, nor was it necessary to secure its object. The title certainly passed by the deed to the grantee, subject to the rights of creditors or purchasers, but not liable to be questioned by strangers who have no claim, and as that was the situation of this defendant, she being neither a creditor nor a purchaser, a new trial must be granted.

Judge HITCHCOCK dissented.