Hitchcock, C. J.
The decree which is sought to be reviewed in this case, was rendered in eighteen hundred and thirty-seven — more than twelve years before the filing of the present bill. But still, the complainants being, as they say, infants at the time of the rendition of the decree, are, so far as any limitation is concerned, within time in filing this bill of review.
It appears further, from the bill of review, that the parties claiming interest in the tract of land in controversy,- and referred to in the original bill, have been entirely changed since the rendition of the original decree. At that time, the widow and heirs of Edward Barton, sen., with the exception of Edward Barton, jr., were contesting the right to this land with the said Edward Barton, jr. Since that time, Edward Barton, jr., has transferred his interest to Thomas Morris, since deceased, and the interest of the widow and other heirs of Edward Barton, jr., has become vested in John Jolliffe; so that the real par *420 ties now contesting the right to this land are John Jolliffe and the heirs of Thomas Morris.
The original bill was filed on the fourth of July, 1836, by Joseph Barton and fifteen others, representing themselves to be the children and heirs of Edward Barton, sen., deceased, against Edward Barton, jr., and others, the said Edward Barton, jr., being also an heir of said Barton, sen.
It is represented in the bill, that in 1817, one Amos Haines entered into a contract with the said Edward Barton, sen., by which he agreed to sell and convey to the said Barton, upon the terms therein stipulated, a certain parcel of land in Eerdi nand O’Neal’s survey, No. 913, in Clermont county, and that the purchase was paid by the said Edward Barton, sen.
So far there is no controversy between the parties. Such contract was entered into, and the purchase was paid by the said Barton, partly before and partly after the death of said Haines.
It is further stated in the bill, that, in 1819, the said Amos Haines died, leaving Marquis de La Fayette Haines his only child and heir at law; and that the said Marquis de La Fayette Haines died in 1822, leaving Noah Haines, Robert Haines, Joseph Canby and Margaret, his wife, formerly Margaret Haines, Nathan Haines, Haines McKay, Washington McKay, Noah McKay, Amos McKay, Joseph Miller and Cassandra Miller his heirs at law — the said Noah Haines, Robert Haines, Margaret Canby and Nathan Haines, being the brothers and sister of the said Amos Haines, and the other persons named, his nephews and nieces; that, in 1823, James S. Johnson, having received a power of attorney from the heirs of Marquis de La Fayette Haines, authorizing him to convey the land descended through the said Fayette from the said Amos, to them, and he having intermarried with Mary, the widow of the said Amos, the said Edward Barton, sen., applied to him for a deed of so much of the land by him purchased as he was entitled to; and the said Johnson, in pursuance of the request of the said Edward Barton, sen., did convey, in company with his wife, about one *421 hundred and thirty-five acres of the land to Edward Barton, jr. Subsequently Edward Barton, sen., sold thirty-five or thirty-six acres of this land, which was conveyed by Edward Barton, jr. That Edward Barton, jr., was not of full age when the land was conveyed to him, and it is charged that he took it in trust for his father. It is further charged that the power of attorney under which Johnson acted, was defective, and that, by his deed, no legal title was conveyed.
The facts of the case show that these statements are generally true. The contract with Haines was complied with by Barton, sen., and a deed made by Johnson and wife to the younger Barton. It was so made in pursuance of the direction of Barton, sen. But there is no evidence of any trust. There is evidence that the object in having the conveyance so made was, to keep the property out of the way of the creditors of Barton, sen. Of this fact there can be no doubt. The power of attorney, under which Johnson acted, was defective, in that it was attested by only one witness. But in conveying the land, he conveyed with full covenants of -warranty, and in 1824 and 1825, the heirs of La Fayette Haines conveyed all their interest in his estate to said Johnson, by deeds duly executed — at least, such was the fact with respect to all the heirs except Mary McKay, who was the sister of Amos Haines.
The bill seeks relief against Edward Barton, jr., if the title of the land should be found to be in him; if not, then against the heirs of Amos Haines. Edward Barton, sen., remained in possession of the land until his death, which took place in or about 1835.
There are many statements and allegations in the bill which are not noted, but it is believed that nothing further is necessary to be stated, for the understanding of the points heretofore decided. As before stated, the case came on for hearing at the April term of the supreme court, 1837, and the bill was dismissed.
It is claimed that the court erred in receiving evidence to prove that the design of Edward Barton, sen., in directing the *422 deed to be made to Edward Barton, jr., was to defraud creditors ; and it is said that upon this point the case was determined. Whether this were so or not, the record does not show. It may have been so, or it may be the mere conjecture of counsel. The question raised by counsel now is, whether this was competent evidence. This objection does not well come from complainant’s counsel; for the depositions proving the fraud are depositions taken by complainants, and it does not appear that any objection was made to them or any part of them; and as they were on file .in the case, it is not surprising that the court should have looked into them and considered them a part of the case.
But one objection made is, that there was nothing in issue between the parties, which rendered it competent or proper to prove the fraud. This is urged by counsel in argument; the objection is not made in the assignment of errors. In this, however, counsel is mistaken. Edward Barton, jr., does allege that at the time the conveyance was made, his father was involved in debt and embarrassed in his circumstances.
It is, however, assumed by counsel, that even admitting that the design of this conveyance was to defraud creditors, still Edward Barton, jr., could only take the title in trust for hi's father, or rather would take no title at all, and the statute of frauds is referred to, which declares that all conveyances made or obtained for the purpose of defrauding creditors “ shall be decreed utterly void and of no effect.” If this position be sound, then I can see no error in dismissing the bill so far as Edward Barton, jr., was concerned, and the great object of the proceeding was to reach the land in his hands. ■ Tf he took nothing by the deed, because by the statute it was “ utterly void,” he certainly had no interest upon which a court of chan eery could act.
But is it a sound principle that a deed of the character re-' ferred to is “utterly void,” as between parties to the same, and privies ? This question was settled by this court twenty-fiva years since in the case of Burgett v. Burgett, (1 Ohio Rep. *423 469,) in which it was held by a majority of the court, that such deed was not void except as to creditors and subsequent purchasers. And from the time of the decision of that case, I believe such has been considered to be the law of the state. It is true I did not concur with the majority of the court in the decision of that case, being disposed to give the statute a more liberal construction. Still, I have never since felt disposed to question the correctness of the decision, believing it to be more important for the interest of the people of the state, that the law should be considered as settled, than that it should be set-tied in a particular way or manner. It seems to me clear, that the construction put upon the law by the court, will be more effectual to prevent fraudulent conveyances, than the construe-, tion which I should myself originally have put upon it.
The evidence in the case which is now sought to be reviewed, would certainly have justified the court in finding that the conveyance made to Edward Barton, jr., was directed so to be made with a view to defraud creditors, and therefore the title thus vested in him could not be reclaimed by the father, or his representative. The father, although he lived twelve years after the title was vested in the son, did not attempt to reclaim it, if at all, until a short time before his death. As before remarked, there is nothing in the record to show that the court rendering the decree, was induced so to do, in consequence of the fraud, still if it were in fact so, it would be no cause for reversing that decree.
But the court might have been operated upon by a different principle of law which would be equally conclusive against the complainants in the original bill. The ease shows that Edward Barton, sen., paid for the land, and that he directed the conveyance to be made to his son Edward, jr. Now in similar circumstances, if the purchaser of land directs the conveyance to be made to a stranger, the grantee may be considered as holding the title for the purchaser. There is a trust which may be enforced. But if a father thus purchases land, and directs the conveyance to be made to a son or daughter, the presump *424 fion is that it is intended as an advancement. This presumption may be rebutted by competent evidence. Declarations made by the father subsequent to the conveyance, however, would not be sufficient. But even if they were, it seems in this case that the father treated the land as his son’s for many years after the date of his deed, and even up to near the time •of his death. True, he sold a part of the land included in the ■deed, and the son conveyed the same according to his wishes. But there is certainly no evidence in the case which would of necessity induce the court to say that this was not intended as .an advancement, unless it be the evidence which shows a fraudulent intent. There is nothing in the case inconsistent with the idea that the court may have considered this as an advancement, and decided the case accordingly.
It is next contended by complainant’s counsel, that Edward Barton, jr., had no title to this land, and that upon the whole ■case the decree should have been for the complainant; and it is assigned as error that the court did not so decree. It would .seem to me that where an attempt is made to review a decree, the specific errors relied upon should be pointed out. The ■object to be attained by a bill of review is different from that to be attained by a petition for rehearing. But under this general assignment, I can see no material difference between the two. To ascertain whether there is error, the whole case must ■be examined, the facts as well as the law arising upon the facts. .It is in truth nothing but a rehearing. We have, however, carefully examined this case. The title of Edward Barton, jr., is ■evidenced by a deed from Johnson and wife, with covenants of warranty, and subsequent conveyances from the heirs of La Fayette Haines, to Johnson, conveying to him all their interest in the estate of said Haines.
It is insisted by counsel for the complainant, in an elaborate .argument, that in virtue of these conveyances Barton obtained mo title. I shall not go into a careful examination of this argument for this reason. This identical question was before this court in the case of Lessee of Barton et al. v. Heirs of Thom *425 as Morris et al., (15 Ohio Rep. 408,) and substantially the same argument was presented as in the present case. The controversy was with respect to the same land, and the lessors of the plaintiff claimed title under deeds from James S. Johnson, and the heirs of Amos Haines, subsequent in point of time to the conveyances made by said Haines to Johnson, and from Johnson to Edward Barton, under whom the defendants claimed title. The court, after full investigation, held the title of Barton to be valid in law, and entered judgment for the defendants. We are not disposed to question the correctness of the decision then made.
Another error assigned is that the complainants in this bill were infants at the time the decree was entered against them, and that some of them are infants still. There is more difficulty in this question. It must be remembered however that they were complainants, not defendants, in the original case. Had they been made defendants in that case, and had a decree been taken against them without the previous appointment of a guardian ad litem, it would have been error. But when they with others come into court as complainants and are represented by able and persevering counsel, it can hardly be supposed that their rights have been sacrificed. Still, had the fact been made known to the court, that a part of the complainants were infants, guardians would undoubtedly have been appointed. It may be error that this was not done. But I suppose that a court of equity will hardly reverse a former decree, unless some benefit may by possibility result to those seeking the reversal. The bill of review in the present case shows that no such benefit could result to these complainants. The land in controversy in the original bill has passed into other hands, and they are no longer interested in it. So far as the costs of the former suit are concerned, it is not necessary to reverse the decree on that account. Those costs have been paid. The only effect of a reversal would be, still to continue litigation with respect to a certain piece of property, the right to which has been se *426 verely, and almost constantly contested in courts of law and courts of chancery for a period of more than thirteen years.
Upon the whole case, the court are of opinion that the bill should be dismissed.
The second case, of Tremper and others v. The Heirs of Thomas Morris and others, is intimately connected with the one we have been considering. The complainants are the same, and the property in controversy is the same.
The leading facts in the case are as follows: Subsequent to the decree rendered in 1837, before referred to, Thomas Morris purchased the land in controversy of Edward Barton, jr., and commenced an action of ejectment against the tenant in possession, which was removed to the supreme court, and a judgment rendered in favor of Morris at the April term of the court, 1838.
On the 11th of June, 1838, the original bill in the ease now sought to be reviewed, was filed, the object being to enjoin the judgment at law recovered by Morris, and a prayer was inserted in the bill for partition of the land in controversy, among the heirs of Edward Barton, sen., deceased. All said heirs were made parties to the bill either as complainants or defendants. It was alleged that Morris acquired no title by his purchase' from Edward Barton, jr., except to one-seventeenth part of the land. That since the judgment in ejectment the complainants had acquired a legal title by conveyance from Johnson and a part of the heirs of Amos Haines, and that they expected to acquire the legal title to the entire premises.
Morris demurred to the bill, but his demurrer was overruled in the court of common pleas, and the judgment at law perpetually enjoined. Prom this decree he appealed to the supreme court, and in the supreme court filed an answer in which he referred to the case above decided, and made the pleadings, evidence and decree in that case, part of his answer. The case came on for hearing at the April term, 1839, of the supreme court, when the injunction was dissolved and the bill dismissed.
*427 So far as this case is like the case of these same plaintiffs against Edward Barton, jr., it is unnecessary to say anything further than has already been said. In this case, however, it is shown that there had been an action of ejectment, and that the plaintiff in that suit had recovered under a title derived from Edward Barton, jr. The title must have been the subject-matter of litigation between the parties, and the plaintiff must have recovered upon the strength of his own title, not upon the weakness of the title of the opposite party. Now, how did the complainants attempt to avoid this recovery ? Merely by the allegation, that the plaintiff in the ejectment case, had no legal title, and that the defendant in that case had in part procured a legal title,, after the trial at law, a,nd expect soon to procure a perfect legal title. This might perhaps have furnished good cause for a motion for a new trial, in the court of law, in which the ejectment case was tried, but it certainly furnishes no reason for enjoining the judgment at law, and that was the object of the bill.
Another complaint made by counsel is, that the supreme court dismissed the bill without settling the matter of partition. So long as the question of the legal title was in controversy no partition could with propriety be made. But so far as this question was before the court, it was apparent that for the time at least the legal title must be considered as in Morris. He had, just previous to the filing of the bill, recovered in ejectment. But it is said that there were other parties to the record, who had not been served with process, etc., and that the case should not have been disposed of until these parties were before the court.
What is the state of the record ? The original bill was filed against Morris to enjoin a judgment by him recovered. The same bill contained a prayer that partition should be made of the premises recovered in ejectment, between the complainants, and numerous defendants made in the bill. Morris demurred to the bill in the court of common pleas, and the demurrer was overruled. From this decree he also appealed. *428 Counsel for complainant insists that by this appeal, the case above, as respects Morris, was appealed. Admit that this position is well taken, and I am not disposed to controvert it, and it follows as a necessary consequence that the supreme court might with propriety dispose of that part of the case before it, and if such disposition of the case has the effect to destroy all pretense of claim to partition, it can make no difference as to the right and duty of the court.

The hill of review in this case is dismissed.

Spalding, J., dissented, holding that a deed made to defraud creditors is absolutely void, not only as to creditors, but as to the parties to the conveyance, and their representatives.