**In the Matter of Louis J. GRAY, Debtor.**

**John T. DUCKER, Trustee, Plaintiff,**

v.

**FIRST NATIONAL BANK OF SOUTHWESTERN OHIO.**

Bankruptcy No. 3–83–03031.
Adv. No. 3–84–0131.

United States Bankruptcy Court,
S.D. Ohio, W.D.

Aug. 10, 1984.

---

John T. Ducker, Dayton, Ohio, for plaintiff.

John W. Uhl and Stephen S. Marcum, Hamilton, Ohio, for defendant.

Delores Connors, Dayton, Ohio, for debtor.

## DECISION

CHARLES A. ANDERSON, Bankruptcy Judge.

Louis J. Gray (Gray) filed a petition for relief in accordance with Chapter 7 on December 30, 1983. He is a real estate broker, formerly doing business as a partnership with Marilyn Taulbee and in the style of Good Deal Realty.

On 2 May 1984 John T. Ducker, Trustee in Bankruptcy (the Trustee) filed a complaint against First National Bank of Southwest Ohio (the Bank) seeking surrender of all "payments received from and after the 30th day of December, 1983, and all future payments and other payments received in October, November and December, 1983 be declared preferential ... and all other relief which may be just, including contempt for stay violation."

On 23 May 1984 the Bank filed its answer, and a Pretrial Conference was held and a pretrial order was entered on 27 June 1984, wherein the parties stipulated the operative exhibits.

On 25 June 1984 within rule the Trustee filed a memorandum of law; and, the Bank filed its memorandum on 31 July 1984.

The property at issue is a tripartite contract entered into among and between Good Deal Realty, Inc. and Louis J. Gray, (seller) and Marilyn E. Taulbee, (buyer), on .5 October 1981 selling Gray's interest (50 shares of stock) in the corporation. In pertinent part, the seller agreed not to compete with the corporation in any capacity in Butler and Hamilton Counties, Ohio, for five years. The buyer and the corporation assumed any of the notes and mortgages held by "Second National Bank, First National Bank and Kentucky Mortgage Co." In Item 8 of the contract, "The Corporation agrees to pay to the seller, the sum of Three Hundred Dollars ($300.00) per month, for the next ensuing five (5) years ... in monthly installments...."

From the stipulated exhibits the court finds that the Bank holds an installment promissory note in the principal amount of $17000.00 made by Sun Corporation, Inc. on 20 August 1979, signed by Victor J. Gray, President. It also was signed by Jacqueline S. Gray, Victor S. Gray, Louis J. Gray and Marilyn A. Gray. Their signatures were on the note under the name of the corporation, but no corporate capacity was stated.

Under Case No. CV81–11–1132 in the Common Pleas Court of Butler County, Ohio, the Bank took a judgment on 12 February 1982 in the amount of $17,813.13, plus interest, against Sun Corporation, Inc.

and Louis J. Gray, Trustee on the note and ordering foreclosure of the equity of redemption of real estate.

On 17 May 1982 a Certificate of Judgment for "deficiency judgment against the defendants, Sun Corporation, Inc. and Louis J. Gray, Trustee" was filed in the clerk's office in the amount of $10,532.07, under the same case number.

On 25 August 1982, under the same case number, Marilyn E. Taulbee was ordered to appear for examination in "proceedings in aid of execution," reciting a judgment against "Louis J. Gray" in the amount of $10,532.07.

On 25 August 1983 an entry was entered under the same case number by the Common Pleas Court judge, in which it was ordered "that the said payments by Marilyn E. Taulbee to Louis J. Gray in the amount of Three Hundred and no/100 ($300.00) Dollars per month as set forth in 'Exhibit A' [the sales contract described above] be paid by Marilyn E. Taulbee to Clerk of Courts of Butler County, and the Clerk is ordered to pay such sums to plaintiff."

## DECISION

The issues as posed by the attorneys for the litigants read, as follows:

1. Are the payments to be made by Marilyn E. Taulbee, as buyer, property of the bankrupt estate?

2. Are payments received by the defendant for the three months prior to the filing of the voluntary petition by the debtor herein, preferential receipts by the defendant?

3. Did defendant become a secured creditor of the debtor in the payments from Marilyn E. Taulbee by virtue of the order of the Common Pleas Court of Butler County, Ohio filed August 25, 1983.

The Trustee argues that the "execution is not against the judgment defendant, as the judgment defendant is [sic] Louis J. Gray." Earlier, he emphasizes, the judgment was against Sun Corporation, Inc.

and Louis J. Gray, *Trustee*. He further argues "... that the payments from Marilyn E. Taulbee can only be seized when they are due, thus, any seizure within the preferential period of time or after the order for relief, should be property of the estate." No citations of authorities for this proposition were provided.

The Bank countered by arguing: "Defendant obtained judgment and levied attachment prior to the ninety day preference period. Upon execution, the entire proceeds due under the contract between Louis J. Gray and Marilyn E. Taulbee became the property of defendant. The fact that the contract proceeds are payable in installments does not affect defendant's paramount right to the entire proceeds. See *In Re Duccilli Formal Wear, Inc.* (1982, BC SD Ohio) 8 BCD 1180...." Also cited is Ohio Revised Code Section 2715.19.

The Bank further argues: "The fact that defendant obtained a judgment against Louis J. Gray, Trustee, does not affect the validity of its execution against Louis J. Gray. By necessity, defendant's complaint on a mortgage note named Louis J. Gray, Trustee, as a defendant because he held title to the subject property in that capacity. It would advance form over substance to submit that execution could only be had against Louis J. Gray, Trustee." No citations of authority for such a theory were submitted.

Finally, the Bank argues its "judgment and execution" constituted a lien more than 90 days prior to the trustee's lien status under 11 U.S.C. § 544. No citations of authorities were provided for this proposition.

The factual submission is notable for what it does not include. For instance, in what kind of trust was "Louis J. Gray, Trustee" serving? Also, who are the beneficiaries? What sums of money are involved from the "attachment"? What is the balance due on the subject contract of sale? Furthermore, there is no evidence of the issuance and levy of any writ of execution or of attachment.

The court draws its following conclusions and opinion only from the evidence as submitted. Based upon the evidence as adduced and within a slightly different framework from the issues as posed, the core issues can be resolved.

This court is constrained to disagree with the proposition of the Bank that the contract balance "is defendant's property and not property of the estate." 11 U.S.C. § 541(a)(1) in defining the bankruptcy estate includes every conceivable interest of the debtor, in property, whether tangible or intangible, personal or real, choses in action, and mere possessory interests. The state court action did not divest title to the contract, as on foreclosure or sale.

The Bank, therefore, must claim a lien on estate property as a secured party, and then establish the validity and priority thereof. The Bank does not address the basic issue directly. It alludes to basics in citing Ohio Revised Code § 2715.19, which refers to "an order of attachment" and provides: "A garnishee under this Chapter shall be liable to the plaintiff in attachment for all property of the defendant in his hands, and money and credits due from him to the defendant. . . ." Although the Bank employs the terms "attachment", "execution" and "garnishor bank," there is no evidence of any order of attachment or seizure and sale of the contract. It is axiomatic that until an attachment is levied by seizure, the attachment lien is not treated as perfected. *Parker v. Miller*, 9 Ohio 109 (1839); *McCombs v. Howard*, 18 Ohio St. 422 (1868); *Liebman v. Ashbacker*, 36 Ohio St. 94 (1880); *United States v. Acri*, 109 F.Supp. 943 (N.D.Ohio 1952).

The statutory authority cited by the Bank pertains to conventional prejudgment orders of attachment, issued only under very limited conditions, and as only provisional remedies pending litigation of the right to a judgment. Needless to add, what was necessary on the facts *instanter* was post judgment remedies of levy of execution and orders in aid of execution to seize the contract itself.

The only facts concerning the Bank's interest are the judgment of the state court on 12 February 1982 and the order of garnishment issued on 25 August 1982 ordering the garnishee to pay the $300.00 per month to the Clerk of Courts, who remits to the Bank. The court could have ordered the garnishee to deliver the contract to the clerk or to a receiver, the payment of the amount owing, or both. Ohio R.C. § 2715.-32. It ordered only payment to the clerk of the amount owing. R.C. § 2715.19 provides that an order of attachment shall bind the property attached from the time of service. A garnishee under Chapter 2715 (as cited) shall be liable to the plaintiff in attachment for all property of the defendant in his possession, and the money and credits due from him to the defendant other than personal earnings from the time of service of the written notice. There is no evidence, nevertheless, that the contract itself was ever attached, but only the payments as they became due. Using the terms of "attachment" and "garnishment" loosely and intermingled as common in many court decisions, it can be concluded that the funds payable under the contract were "attached" upon coming due each month.

As to the funds paid into the clerk of the state court, we refer to the teaching of the Court of Appeals for this circuit, *In Re Corbin*, 350 F.2d 514 (6th Cir.1965), rendered under the provisions of § 67(a) of the Bankruptcy Act (11 U.S.C. § 107(a)). Quoting from *Corbin*, at page 517:

"While the Ohio courts have made no determination as to when title to money realized on garnishment, and in the possession of the law, passes to the creditor, it appears to this court that title had not passed at the time the petition in bankruptcy was filed. . . ."

\* \* \* \* \* \*

"It must, therefore, be concluded that payment having been made to the creditor by the court on the same day as the petition in bankruptcy was filed, that the creditor had only a lien on the fund, which lien was extinguished by the bank-

ruptcy action by virtue of the provisions of 11 U.S.C.A. § 107, sub. a."

Such prior statutory special provisions pertaining to invalidation of judicial liens are rendered unnecessary under § 547 of the Bankruptcy Code. Liens of garnishment, attachment and levy of execution are subject to Code § 547. These liens are encompassed within the term "transfer" as defined by Code § 101(40). Furthermore, a trustee may avoid such a lien and make a recovery even after the judicial lien has been enforced. 11 U.S.C. § 550. We hold, furthermore, that the lien did not attach as to any specific funds until they were paid into court.

The conclusion must be reached, therefore, that the rights of the Bank stem entirely from the order of garnishment only, which under any confused semantics is not an "attachment" of the contract giving rise to a lien, but only the proceeds when due and payable. The State of Ohio by Revised Code Chapter 2716 codifies post-judgment garnishment of property as *sub-judice*, (rather than Chapter 2715 as cited). The Statute § 2716.21(B) (R.C. § 2716.21) specifically enables a court after "a garnishee appears and answers and on his examination it is discovered that at or after the service of the notice upon the garnishee, he possessed any money, property, or credits of the defendant or was indebted to the defendant, the court may order the payment of *the amount owed* into court...." [emphasis added]. No lien is provided for the garnishing creditor. On the contrary, the only remedy to the garnishing plaintiff if "... the garnishee fails to pay according to the order, execution may issue thereon." R.C. 2716.21(C). The garnishment order "shall bind the property ... of the defendant in the possession of the garnishee from the time of service." See R.C. § 2716.13. On the facts, only the amount owed, not the contract, was bound. The contract would have been subject to a lien only upon execution, on the date the Sheriff levied. See *Butz v. BancOhio National Bank*, 13 B.R. 425 (Bkrtcy.Ohio 1981).

This important distinction is critical because 11 U.S.C. § 544(a)(1) and (2) specifically provides that a trustee in bankruptcy obtains, among other rights, the rights of a hypothetical lien creditor as of the commencement of the case (herein December 30, 1983). This lien attached to the debtor's interest in the contract. Employing the principle in *Butz v. BancOhio Nat. Bank* the garnishment order on the paid in proceeds owed would have been a transfer perfected superior to a trustee's lien as of the date paid to the state clerk of courts, and not when remitted to the Bank. This date fixes the Bankruptcy Code's 90-day preferential period. All payments made to the clerk of courts within this 90-day period are avoidable transfers. See 11 U.S.C. § 547(b). The facts do not establish the monetary amounts so involved, if any.

Since the Bank never levied upon the contract, it had no rights or interest therein to enforce payments as a party thereto. It acquired only the right to levy against the proceeds when due. See Ohio R.C. § 2716.-21(C).

The fine distinction between garnishing the proceeds of the contract at issue and attaching the contract to perfect an attachment lien is critical to a disposition of the issues in other respects than determining the status of the trustee's lien on the contract and proceeds. The parties overlook the very crucial fact that the purchase agreement does not require any payments directly from the garnishee, Marilyn Taulbee. It must be noted Item 8.) of the agreement specifies that *"The corporation agrees to pay* to the Seller, the sum of Three Hundred Dollars ($300.00) per month, for the next five (5) years..." The agreement runs to the benefit of the corporation also as a party and signatory to the contract. Thus, not only was the contract never attached to obtain a lien thereon; but also, the responsible party (the corporation) liable for the monthly payments was never garnished. In fact, the corporation was never even made a party to the action.

There, in addition, is no evidence of the basis for issuing either an attachment or a

garnishment against the contract of which Louis J. Gray, the debtor, was a party and signatory, in order to collect a judgment specifically rendered against "Louis J. Gray, Trustee." The Bank urges that this is merely "form over substance." There was no evidence adduced to establish such a fact or conclusion.

In all regards, the conclusion is inescapable that the Bank did not obtain an attachment lien against the contract, and that the garnishment "lien" obtained against the amount "owed" neither attached to amounts payable after the date of garnishment *nor to any amounts owed by the corporation.* The date for fixing the avoidable preference date of perfection and 90-day period is the date the clerk of courts received the garnishment funds.

The parties should confer immediately to establish the monetary amounts involved and submit a tabulation to the Clerk of the Bankruptcy Court for preparation of a judgment entry.