**In the Matter of SUPERMERCADOS COOPERATIVOS del ESTE, Debtors.**

Civ. No. 92–1560 (JP).

Bankruptcy No. 88–01348 (SEK).

United States District Court,
D. Puerto Rico.

Aug. 18, 1994.

Diana C. Méndez Ondina, Hato Rey, PR, for appellant USI Properties Corp.

Charles A. Cuprill Hernández, Ponce, PR, Sergio A. Ramírez de Arellano, San Juan, PR, for appellee Carlos Lastra González.

## OPINION & ORDER

PIERAS, District Judge.

The Court has before it an appeal pursuant to 28 U.S.C. § 158(a) (1993) from the Bankruptcy Court's Opinion and Order approving the trustee's disbursement of proceeds. The issue before the Court is whether the garnishment of funds due to a purported creditor of a debtor in a bankruptcy case constitutes the same as the attachment of the mortgage notes held by that purported creditor. The Bankruptcy Court determined that it does not, thereby confirming trustee's disbursements of the proceeds from the sale of two lots. After carefully reviewing the record and the arguments presented, the Bankruptcy Court's decision is hereby **AFFIRMED.**

## I. SUMMARY OF STIPULATED FACTS [1]

On May 17, 1988, Supermercados Cooperativos del Este ("debtor") filed for bankruptcy relief under Chapter 7 of the Bankruptcy Code. Carlos J. Lastra was appointed as debtor's trustee on May 19, 1988. The debtor's estate included the following encumbered properties: property number 10,112 of Humacao, Puerto Rico, at Centro Comercial Casillas (hereinafter "Lot 2"); properties number 11,153 (# 10–A) and 11,152 (# 6–B) of Humacao, at Centro Comercial Humacao (known collectively hereinafter as "Lot 1"). Compañía de Desarrollo Comercial de Puerto Rico ("CDC") became one of debtor's secured creditors by being the holder of various mortgage notes encumbering the properties listed above.[2]

CDC had various creditors of its own. On June 29, 1987, U.S.I. Properties ("USI") became judgment creditor of CDC as a result of the proceedings held in *U.S.I. Properties Corp. v. M.D. Construction Inc.*, Civ. No. 83–2647 (JAF). On January 26, 1989, the District Court issued an Order of attachment in execution of judgment directing the trustee to issue any checks for "whatever amounts may be due to CDC" payable to the Clerk of the District Court in order to satisfy expenses, principal and interest, and costs and attorney's fees. The trustee was notified of the attachment on February 10, 1989.

Meanwhile, Federación de Cooperativas de Puerto Rico ("Federación"), another one of CDC's creditors, used the local forum to collect from CDC. The Superior Court, in *Federación de Cooperativas de Ahorro y Crédito de P.R. v. Compañía de Desarrollo Cooperativo*, Civ. No. KCD89–0186 (807), issued a writ directing the state marshal's service to attach personal property of CDC to secure the effectiveness of a possible judgment which could be eventually issued in

---

1. There is no disagreement between the parties as to relevant facts. The conflict is limited to legal consequences.

2. CDC alleged secured status in the following proofs of claim: Claim No. 144, in the amount of $996,805.00, was based on Deed No. 9, dated October 14, 1983, before Notary Public Francisco Díaz Hernández, and on Deed No. 10, dated November 29, 1983, before Notary Public Francisco Díaz Hernández. Claim No. 145, in the amount of $181,178.15, as amended by Claim No. 146, was based on Deed No. 5, dated March 13, 1984, before Notary Public Francisco Díaz Hernández.

CDC also held the following promissory notes guaranteed by these mortgages:

1. Mortgage promissory note for $150,000.00 issued by Supermercados Cooperativos del Este on March 13, 1984, and notarized in Affidavit No. 434 by Notary Public Francisco Díaz Hernández on March 13, 1984.

2. Mortgage promissory note for $200,000.00 issued by Supermercados Cooperativos del Este on March 28, 1985, and notarized in Affidavit No. 5236 before Notary Public Josefina Rivera on March 18, 1985.

3. Mortgage promissory note for $100,000.00 issued by Supermercados Cooperativos del Este and notarized in Affidavit No. 401 by Notary Public Francisco Díaz Hernández on October 14, 1983.

Federación's favor. As a result thereof, the mortgage notes listed previously were physically attached on February 17, 1989. On June 30, 1989, Judgment was entered and the debtor was served with an Order and Notice issued by the Superior Court, San Juan Section, requiring it to disburse to Federación all payments due to CDC from the attached notes. As a result of a public sale held in execution of judgment on October 17, 1989, Federación was declared the owner of, inter alia, the aforementioned promissory notes. Subsequently, the trustee paid Federación the amounts due on the notes.

On August 18, 1989, the Bankruptcy Court approved the sale of Lot 2 (Centro Comercial Casillas). The property was sold to R & J Investors on October 16, 1989, for $500,-001.50. On November 30, 1989, upon Federación's delivery to the trustee of the originals of the mortgage notes encumbering the Centro Comercial Casillas premises, the trustee tendered to Federación a check in the amount of $234,772.17 from the trustee's account # 613–00097–8 at Banco Central Corp. Even though the property was sold prior to Federación's execution judgment, payment by the trustee was effected after Federación was declared owner of the notes.

On October 16, 1989, the trustee held the auction of Lot 1 (Centro Comercial Humacao) and filed a motion requesting confirmation of the sale. The sale was confirmed at a hearing held on October 17, 1989, and an Order was entered on October 20, 1989, confirming the sale to Mr. Carlos Vázquez in the amount of $1,575,000.00. Closing was ordered to be held no later than thirty (30) days from the date the Order became final. On December 14, 1989, the trustee, purchasers Carlos Vázquez Torres and María Isabel Rodríguez Cedres, and secured creditor Federación executed before Notary Public Sergio A. Ramírez de Arellano, Esq., Deed Number 132 of "Liberación, Compraventa y Cancelación" in reference to these premises. At closing and upon delivery to Sergio A. Ramírez de Arellano, Esq. of the originals of the mortgage notes encumbering said property, the trustee issued and delivered to Federación checks number 708 and 713 in the amount of $140,971.61 each from the trustee's account # 613–00097–8 at Banco Central Corp. At the time the closing took place, Federación was the lawful owner of the promissory notes secured by this property.

## II. DISCUSSION

### A. Methods Used to Collect From CDC

The sole controversy on appeal is determining the proper recipient of the proceeds from the sale of Lots 2 and 1. USI claims that the trustee wrongfully transferred the proceeds from the sale of the two properties to Federación. USI argues that it garnished the "funds owed CDC" before Federación attached the mortgage notes which evidenced the debts that would eventually generate those funds. Since both attachments have debtor's obligations towards CDC as sources, USI alleges that both parties attached the same thing. USI bases its priority in the "first in time, first in right" rule.[3] The Court disagrees with appellant's theory.

One of the duties of a trustee in bankruptcy is to "collect and reduce to money all property of the estate for which [he] serves." 11 U.S.C. § 704(1) (1993). The property must be sold free and clear of liens. This disposition goes hand in hand with a rule that is valid as of the enactment of the Bankruptcy Act of 1898: a lien on real property passe[s] through bankruptcy unaffected. *Dewsnup v. Timm*, 502 U.S. 410, ———–——, 112 S.Ct. 773, 777–79, 116 L.Ed.2d 903, 911–12 (1992).

[L]iens which arose before bankruptcy and are not invalidated are recognized as a charge upon the assets.... These liens,

---

**3.** This rule states that "between two judgment creditors without other liens, the first creditor to attach has priority." *F.D.I.C. v. Shearson-American Exp., Inc.*, 996 F.2d 493, 501 (1st Cir.1993) (applying Puerto Rico law); *Oronoz & Co. v. Alvarez*, 23 P.R.R. 497 (1916); *Auffant v. Succession of Manuel de J. Ramos et al.*, 23 P.R.R. 385 (1916); *Puerto Rico Bedding Mfg. Corp. v. Herger*, 91 P.R.R. 503 (1964); *Empresas Capote, Inc. v. Superior Court*, 3 Official Translations of the Supreme Court of P.R. 1067 (1975). Needless to say, "'such preference does not go beyond the right which the debtor may have over the property attached.'" Id. at 1078–79 (quoting *Puerto Rico Bedding Mfg. Corp. v. Herger*, 91 P.R.R. 503, 507 (1964)).

with certain exceptions, must be satisfied in full before any payment of dividends to unsecured creditors or administrative expenses can be made. Only after the discharge of valid liens and encumbrances are assets available for distribution. . . .

3 COLLIER ON BANKRUPTCY ¶ 507.-02[3][a], at 507–14 (15th ed. 1993). To protect the lienholder while performing this duty:

> [T]he trustee may sell property . . . free and clear of any interest in such property of an entity other than the estate, only if . . . such interest is a lien and the price at which such property is to be sold is greater than the aggregate value of all liens on such property.

11 U.S.C. § 363(f)(3) (1993). The fact that the trustee sold the properties for an amount that could cover the liens under discussion is not disputed.

A lien is a "charge against or interest in property to secure payment of a debt or performance of an obligation." 11 U.S.C. § 101(37) (1990). There are various types of liens, see 11 U.S.C. § 101(36), (51), and (53) (1993), but the relevant liens in this case are the security interest liens, those created by agreement. See 11 U.S.C. § 101(51) (1993). The mortgages encumbering both lots are liens for bankruptcy purposes and the trustee cannot deposit sale proceeds until the lienholders are fully paid. 3 COLLIER ON BANKRUPTCY ¶ 507.03[3][b] at 507–15 (15th ed. 1993). Therefore, the Court must ascertain which of these two parties was entitled to the sale proceeds.

CDC held the mortgages over both these properties which allowed for its status as a secured creditor and the subsequent attractive position for its own creditors. Rule 56.1 of the Puerto Rico Rules of Civil Procedure, P.R.LAWS ANN. tit. 32, App. III (1983), allows for the attachment and the garnishment of personal property as provisional remedies. USI chose the garnishment of funds due to CDC to satisfy its judgment against CDC. Federación opted for the attachment of specific promissory notes and became their holder. USI's choice was lawful, but as far as these proceeds are concerned, a tactical mistake. USI is a victim of

that old proverb: "One should not bite off more than one can chew."

A garnishment of funds due has legal consequences that are different from those of an attachment of mortgage notes. In *In the Matter of Gray*, 41 B.R. 374 (Bankr.S.D.Ohio 1984), a judgment creditor sought surrender of all payments to be made to the debtor under a contract for sale of the debtor's interest in a corporation. The creditor obtained an order of garnishment instructing the garnishee to pay the monthly installments (pursuant to the promissory note) to the Clerk of the Court who would later remit them to him. The Court distinguished the attachment of a contract from the attachment of payments owed and determined that "[s]ince the [judgment creditor] never levied upon the contract, it had no rights or interest therein to enforce payments as a party thereto. It acquired only the right to levy against the proceeds when due." *Id.* at 378. The Supreme Court of Puerto Rico agrees. In *F.D. Rich v. Superior Court*, 99 P.R.R. 155 (1970), the impending judgment creditor attached "any right, title and interest which [its debtor] could have in the remnant" of a contract. Id. at 172. The Court interpreted this provisional remedy as "the right—whichever it may be—which [the debtor] might have in the remnant once the contract [i]s liquidated." *Id.*

When USI garnished whatever could be due to CDC, it garnished money contingent on its eventual availability. Since some of the credits CDC owned were evidenced by mortgage promissory notes which are negotiable instruments, there was a degree of uncertainty concerning the titleholder of those liens as well as the availability of the funds. In *Production Credit Association v. Rodríguez & Pagán*, 81 P.R.R. 867 (1960), the Supreme Court of Puerto Rico stated that "a promissory note transferable by indorsement [sic] or by mere delivery of the instrument, is personal property under the provisions of law . . . and is therefore, subject to attachment by seizure." *Id.* at 873–74. When the trustee argues that USI's garnishment was not perfected because USI did not attach the promissory notes in question, he is ignoring the existence of the gar-

nishment of funds as a separate valid remedy.[4] Regardless of the inapplicability of this argument, as far as these two properties are concerned, USI garnished nothing because nothing was owed to CDC.

### B. *The Proceeds from the Sales of the Lots*

As to the disposition of Lot 2, USI has no right to the sale proceeds given to Federación. The trustee sold Lot 2 on October 16, 1989. At that time, CDC was still the rightful owner of the promissory notes secured by mortgages over this property. However, even though at that point USI's all-encompassing garnishment was in full force, Federación was already in possession of the notes by virtue of an attachment.[5] Federación's attachment of the notes in effect excluded the money that the promissory notes could generate from the "universe of funds" USI attached. The funds were no longer monies due to CDC; therefore USI was not entitled to the funds generated from the sale.

The trustee's actions with regard to the disposition of the proceeds from the sale of Lot 1 were also correct. The sale of Lot 1 was held on December 14, 1989, at which time Federación was the rightful owner of the mortgage promissory notes. As the lienholder, Federación had priority over the sale proceeds. CDC had no "funds due" regarding this property since the promissory notes evidencing the debts between the debtor and CDC were negotiable instruments vulnerable to transfers of ownership. Federación became the owner of the promissory notes and acquired the right to funds guaranteed by the property.

In light of the fact that Federación was entitled to the proceeds from the sale of Lots 2 and 1, USI will have to wait in order to try to collect its credit from CDC because to date the trustee has not ascertained whether any funds are due to CDC under bankruptcy law. Therefore, the trustee cannot deposit funds due to CDC with the Clerk of the District Court and may in fact never be able to.

### C. *Additional Claims*

USI also attacks the trustee's actions invoking various alleged violations in the disbursement procedure. USI mentions that the trustee did not consult the Court, file an interpleader, or demand a proof of claim before paying the lienholder, Federación, in exchange for delivery of the mortgage notes for purposes of cancellation. The Bankruptcy Code does not require these actions from the trustee in the discharge of a lien. Therefore, these additional claims lack any validity.

## III. CONCLUSION

Wherefore, in view of the foregoing, the Bankruptcy Court's Opinion and Order issued on April 1, 1992, approving of the trustee's disbursement of the proceeds of the sale of Lots 1 and 2 is hereby **AFFIRMED.** Judgment shall be entered accordingly.

IT IS SO ORDERED.

---

**4.** USI never sought to collect directly against the promissory notes.

**5.** Federación became the proprietor of the promissory notes the day after upon the public sale in execution of judgment.