## KAUFMAN v. EASTERN BAKING CO.

No. 4010.

Circuit Court of Appeals, First Circuit.

Jan. 19, 1945.

Mark M. Horblit, of Boston, Mass. (Sidney J. Kagan, Louis Winer, and Maurice H. Horblit, all of Boston, Mass., of counsel), for appellant.

Milton C. Borenstein, of Chelsea, Mass., for appellee.

Before MAHONEY and WOODBURY, Circuit Judges, and FORD, District Judge.

WOODBURY, Circuit Judge.

This is an appeal from a judgment entered for the defendant in an action brought by a trustee in bankruptcy to recover an alleged preference. The facts are stated in detail in the opinion of the court below. D.C., 53 F.Supp. 364. For present purposes a brief summary will suffice.

In July, 1938, the defendant, a Maryland corporation, and Frank Sanford of Boston, the bankrupt, entered into a written contract whereby the defendant agreed to purchase and the bankrupt agreed to construct and within approximately four months to deliver two paper cup machines. Advances on account of the agreed purchase price of $4,500 were made from time to time as work on the machines slowly progressed until on March 20, 1940, a total of $4,100 had been advanced although at that time the machines were still unfinished. On this date the defendant filed a verified bill in equity in the Massachusetts Superior Court against Sanford, his wife, and three of his creditors, seeking specific performance of the contract or refund and restitution of the advances made. On the day this bill was filed the court entered a temporary order restraining Sanford from "transferring, conveying, pledging, encumbering or otherwise disposing of the personal property including machinery, equipment, tools, fixtures and stock in trade belonging to the machine shop owned or operated by him"; five days later it continued that order in force, and on March 27, 1940, after a hearing, it entered an interlocutory decree continuing its temporary order "pending the final determination of this suit vs. defendant Frank Sanford." On April 2, 1940, after another hearing it continued this order in force "pending the final determination of this suit."

The next important step occurred on July 8, 1940, when the Superior Court entered interlocutory decrees sustaining demurrers of Sanford, his wife, and one creditor, a mortgagee. Following this the plaintiff filed a substitute bill of complaint, not verified, but which was subsequently allowed as an amendment, in which it sought substantially the same relief it had asked for previously. Subsequently decrees were entered dismissing this substitute bill as to the two remaining creditor-defendants, demurrers to it by the other defendants having previously been overruled. No further order was entered on this substitute bill granting or continuing any restraining order until January 30, 1941, when, the parties having stipulated for performance of the contract within twelve weeks and for a sale by a special master of Sanford's interest in the personal property in his machine shop and payment of the proceeds thereof in the amount of $4,750 to the Baking Company if he should fail; a decree was entered restraining Sanford's wife (on March 14, 1941, it was amended to include Sanford himself) until final determination of the suit from transferring in any way any of the personal property except in the usual course of business. Sanford again failed to perform, and on May 13, 1941, a final consent decree was entered adjudging that Sanford was indebted to the Baking Company in the amount of $4,750; ordering a special master to sell the personal property covered by the interlocutory restraining orders to the Baking Company for that amount, and to distribute the proceeds as follows: $600 to the defendant mortgagee for the discharge of her mortgage, $307.20 to the special master for his fee and expenses, and $3,842.80 to the Baking Company toward satisfaction of Sanford's indebtedness to it. At some time subsequent to this decree—the court below did not specify the exact date—sale and distribution was made according to its terms. But within a week after this decree was entered (May 19, 1941) an involuntary petition in bankruptcy was filed against Sanford and on May 26, 1941, he was adjudged a bankrupt. Taking the position that the sale by the special master to the Baking Company constituted a preference under § 60, sub. a,[1] of the Bankruptcy Act, 11 U.S.C.A. § 96, sub. a, Sanford's duly appointed trustee brought the instant action under 60, sub. b,[2] of the Act, 11 U.S. C.A. § 96, sub. b.

The court below found that Sanford had never made an outright gift of the property in dispute to his wife but owned it himself at all times here material; that he was insolvent from and after January 30, 1941; and that the Baking Company believed or had reasonable cause to believe that he was insolvent from and after July 18, 1940. But it concluded as matter of law that the temporary restraining order entered on March 20, 1940, and continued thereafter, gave rise to an equitable lien; that this lien was not terminated by the interlocutory decree of July 8, 1940, sustaining demurrers to the original bill in equity; that the lien was not terminated by the interlocutory decree of January 30, 1941, and that, since the lien antedated the bankruptcy by more than four months and the sale by the special master was in enforcement of it, the sale did not constitute a voidable preference within the meaning of § 60 of the Bankruptcy Act.

 The trustee in bankruptcy, the appellant herein, concedes that an equitable lien obtained more than four months before bankruptcy and a sale made in execution of it are valid as against him under § 67, sub. a(1), of the Act, 11 U.S.C.A. § 107, sub. a (1). And he concedes that, given jurisdiction, a temporary restraining order of the kind issued under the original bill in equity gives rise to an equitable lien. Metcalf v. Barker, 187 U.S. 165, 23 S.Ct. 67, 47 L.Ed. 122; Snyder v. Smith, 185 Mass. 58, 69 N.E. 1089; Gay v. Ray, 195 Mass.

[1] Section 60, sub. a, of the Bankruptcy Act, 11 U.S.C.A. § 96, sub. a, provides in part:

"(a) A preference is a transfer, as defined in this title, of any of the property of a debtor to or for the benefit of a creditor for or on account of an antecedent debt, made or suffered by such debtor while insolvent and within four months before the filing by or against him of the petition in bankruptcy, * * * the effect of which transfer will be to enable such creditor to obtain a greater percentage of his debt than some other creditor of the same class. * * *"

[2] Section 60, sub. b of the Bankruptcy Act, 11 U.S.C.A. § 96, sub. b, provides in part:

"(b) Any such preference may be avoided by the trustee if the creditor receiving it or to be benefited thereby or his agent acting with reference thereto has, at the time when the transfer is made, reasonable cause to believe that the debtor is insolvent. * * *"

8, 80 N.E. 693. His position is, first, that the Massachusetts Superior Court was without jurisdiction over the original bill in equity filed by the Baking Company so that as a result no equitable lien could arise by virtue of the temporary restraining orders issued upon it, and second, that even if the temporary restraining orders issued upon the original bill did give rise to an equitable lien, that lien was rendered functus officio by the order of July 8, 1940, sustaining demurrers to that original bill. Thus he says that the first order of the Massachusetts court which could create an equitable lien was the restraining order entered on the amended bill on January 30, 1941, which was within four months of Sanford's adjudication in bankruptcy and therefore null and void. We do not agree.

■ By statute the courts of Massachusetts are given special equitable jurisdiction to entertain bills brought by creditors to "reach and apply" property of their debtors. This statute (G.L. (Ter.Ed.) Ch. 214, § 3, cl. 7) reads as follows:

"The supreme judicial and superior courts shall have original and concurrent jurisdiction in equity of the following cases: * * *

"(7) Creditors' Bills—Suits by creditors to reach and apply, in payment of a debt, any property, right, title or interest, legal or equitable, of a debtor, within or without the commonwealth, which cannot be reached to be attached or taken on execution in an action at law, * * *."

Since it is well settled that this statute does not create equitable rights under general equitable jurisdiction, but instead enlarges the equity jurisdiction of the Massachusetts courts, (Stockbridge v. Mixer, 215 Mass. 415, 417, 102 N.E. 646; McCarthy v. Rogers, 295 Mass. 245, 246, 3 N.E.2d 787; Hoshor-Platt Co. v. Miller, 190 Mass. 285, 286, 76 N.E. 650; Mathews Slate Co. v. Mathews, C.C., 148 F. 490,

495), it necessarily follows that for the Massachusetts courts to have jurisdiction under it there must be compliance with the statutory requirements. This, the appellant argues is lacking. He says that neither the original nor the substitute bill meets the statutory requirements for a creditor's bill under the statute, and that, even if the substitute bill should be considered to meet them, it was for a different cause of action from the original one upon which the temporary restraining orders were issued.

■ To answer this contention we need not look beyond the substitute bill. The reason for this is that it was allowed as an amendment, and under Massachusetts practice a plaintiff may amend his pleadings, even after demurrer, in order to "sustain the action for the cause for which it was intended to be brought,"[3] and the allowance of such an amendment is conclusive evidence of the identity of the cause of action.[4] Thus if the substitute bill of complaint was a "creditor's bill", so also was the original.

■ From the provisions of the Massachusetts statute (G.L. (Ter.Ed.) Ch. 214, § 3, cl. 7) quoted supra in the body of this opinion it is apparent that to invoke the special equity jurisdiction which it confers two matters must appear: (1) That there is a "debt"; and (2) that the debtor has property "which cannot be reached to be attached or taken on execution in an action at law." The substitute bill expressly alleges that Sanford is "indebted to plaintiff for the return of $4100," and it further alleges that the "plaintiff seeks to reach and apply the property of defendant Frank Sanford to the satisfaction of said indebtedness." This it seems to us clearly satisfies the "debt" requirement of the statute. The case of Kilbourne Co. v. Standard Stamp Affixer Co., 216 Mass. 118, 103 N.E. 469, relied upon by appellant in this connection, is not in point since in that case a claim

---

[3] G.L. (Ter.Ed.) Ch. 231, § 51,
"The court may, at any time before final judgment, except as otherwise provided, allow amendments * * * changing the form of the action, and may allow any other amendment in matter of form or substance in any process, pleading or proceeding, which may enable the plaintiff to sustain the action for the cause for which it was intended to be brought, * * *."
"§ 52. Amendment after Demurrer—The court may allow a party to whose pleading a demurrer has been filed to

amend, upon terms, within such time as it orders."

[4] G.L. (Ter.Ed.) Ch. 231, § 138,
"The cause of action shall be considered to be the same for which the action was brought, if the court finds it to be the cause of action relied on by the plaintiff when the action was commenced, however the same may be misdescribed; and the allowance by the court of an amendment shall be conclusive evidence of the identity of the cause of action. * * *"

for damages for breach of an executory contract was held not to be a "debt." No such claim is asserted here, and the distinction is obvious.

The second statutory requirement noted above (that the debtor has property which cannot be reached by attachment or taken on execution in an action at law) is stated in Hoshor-Platt Co. v. Miller, 190 Mass. 285, 286, 287, 76 N.E. 650, 651, as follows:

"The cause of action relied on by the plaintiff is not in itself a subject of equitable jurisdiction; and the plaintiff's right to come into equity depends entirely upon the fact that the bill is brought to reach and apply in payment of its debt property of its debtor which cannot be reached to be attached or taken on execution in an action at law. Rev.Laws, c. 159, § 3, cl. 7. Accordingly the averments of the existence of such property are jurisdictional. Russell v. Milton, 133 Mass. 180. They must be proved as they are laid. If the averments of the bill do not sufficiently show the existence of such property, the bill may be dismissed on demurrer. (Citing cases). If, on hearing, it does not appear that there is such property, the bill must be dismissed."

Now it is true that in the substitute bill of complaint it is not expressly alleged that Sanford's property "cannot be reached to be attached or taken on execution in an action at law," and so it would seem from the language just quoted that the bill might have been dismissed upon demurrer. But the Massachusetts Superior Court instead of doing this overruled demurrers to the amended bill, and this action on its part, in view of allegations to the effect that Sanford had fraudulently conveyed his property to his wife for the purpose of hindering, impeding, delaying and defeating the plaintiff and his other creditors and had caused his wife to mortgage the property for the same purpose, indicates that the Massachusetts Court found the allegations sufficient to show the existence of the kind of property necessary to give jurisdiction. At any rate, as Judge Lowell said in Mathews Slate Co. v. Mathews, C. C., 148 F. 490, 492, with reference to the Massachusetts statute under consideration, "this court is not required to construe in detail a state statute, in order to determine if the allegations of the bill which invoke the statutory jurisdiction are sufficient. Let us suppose, for the sake of argument, that there is doubt of the application of the statute to the claims alleged in this bill. The construction of the statute is for the state court. That is the ultimate tribunal authorized to determine finally if the statute has, in fact, conferred upon the court a jurisdiction which the Legislature of the state might undoubtedly confer if it so willed. * * * It is not to be supposed that the state court would deem the statute inapplicable, and yet retain jurisdiction of the cause in the exercise of its ordinary equitable powers."

From what has been said, there being no compelling reason to believe that the Massachusetts court assumed to exercise a jurisdiction it did not have, we conclude that it had jurisdiction under the statute over the bill as amended.

There is less substance to the appellant's other principal contention. He says, relying upon Stathopoulos v. Reeksting, 252 Mass. 542, 147 N.E. 853, that the temporary restraining order was rendered functus officio when the demurrer to the original bill was sustained. His reliance upon case cited is misplaced. In it the temporary restraining order issued was to continue only "until further order of the court" and the bill upon which it was issued was ordered dismissed, while here the temporary restraining order was to continue in force "pending final determination of this suit" and it is well settled in Massachusetts that an order sustaining a demurrer is not a final decree. "By our practice, an order which merely sustains a demurrer to the bill, without more, is an interlocutory and not a final decree; for it does not put the case out of court, but leaves it still within the power of the court to allow amendments, either in form or in substance, at any time before the bill is ordered to be dismissed." Parker v. Flagg, 127 Mass. 28, 30.

Other points raised by appellant are either sufficiently covered by what has already been said, or are so lacking in merit that discussion of them is not required.

The judgment of the District Court is affirmed, with costs to the appellee.