**ALDRICH SHOE CO. v. KAGAN et al.**

No. 4389.

United States Court of Appeals
First Circuit.

March 25, 1949.

---

458

Harry Bergson, Jr., of Boston, Mass. (Harry Bergson and Bergson & Wolf, all of Boston, Mass., on the brief), for appellant.

Benjamin Goldman, of Boston Mass., for appellees.

Before MAGRUDER, Chief Judge, and CLARK[1] and WOODBURY, Circuit Judges.

## CLARK, Circuit Judge.

This is an appeal by a creditor of a bankrupt against an order of a bankruptcy referee, affirmed by the district court, holding that certain sums deposited by the bankrupt with the Superior Court of Massachusetts for the County of Middlesex are the property of the trustee, rather than the creditor, and ordering the creditor to refrain from making any claim therefor. Jurisdiction was asserted under § 67, sub. a(4), of the Bankruptcy Act, 11 U.S.C.A. § 107, sub. a(4)—the new provision of the Chandler Act giving summary jurisdiction to the bankruptcy court of any proceeding by the trustee to hear and determine the rights of any parties under subd. a(1) of the section, which provides for the dissolution of judicial liens acquired on the bankrupt's estate during insolvency and within four months of bankruptcy. The order also stated that "the liens, if any, obtained" by the creditor upon the sums so deposited "are null and void by virtue of" this statute. The creditor attacks the order on the ground of lack of jurisdiction, asserting that it is at least the equitable owner of the sums in question and no lien is involved.

The bankrupt, Rolls-Kenardlee Corporation, was a corporation engaged in the manufacture of refrigeration units, which in February, 1946, negotiated with the creditor, Aldrich Shoe Company, to lease of the latter certain premises in the City of Cambridge, Massachusetts. The tenancy was to begin March 1, 1946, with the rental of $5,000 a year payable monthly at the rate of $416.67 in advance. Though the lease was never executed the bankrupt went into possession of the premises and paid the rent for the month of March. It failed to pay the rent due April 1 and the rent due May 1, 1946, and Aldrich started an action for ejectment in a state district court to obtain possession of the premises.

On May 31, 1946, the bankrupt filed a bill of complaint in the Superior Court for the County of Middlesex against Aldrich to enjoin the ejectment action and to compel the execution of a lease. A temporary restraining order having been issued the court held a hearing on June 7, 1946, as a result of which it entered an interlocutory decree continuing the restraining order in force and ordering the payment into court of certain sums of money. The specific direction was "that the plaintiff shall pay into the custody of the Clerk of this Court the sum of one thousand two hundred and fifty dollars (1,250.00) on Monday, June 10, 1946, and thereafter shall pay into the custody of said Clerk the sum of four hundred sixteen dollars and sixty-seven cents (416.67), the monthly rent due on premises in question, on the first day of each succeeding month, all of such sums to be held by the Clerk until further order of the Court." And failure to make any payment was to result in dissolution of the stay without further court order.

The first sum referred to, $1,250, was to cover the rent already due for April, May, and June. It was developed at the bankruptcy hearing later that Aldrich had sought payment of the rent to it if the restraining order was to be continued, that the plaintiff had objected that its claims for damages should offset the rental, and that the court had therefore ruled that the rental money should be paid into court to await its further decision.

The bankrupt paid the clerk $1,250 on June 10, $416.67 on July 1, and $416.67 on

[1] Judge Clark of the Second Circuit, serving by designation.

August 2, 1946; and the total, $2,083.34, is the sum here in dispute. Early in September a state court appointed a receiver of the bankrupt, and on September 17, 1946, a petition in bankruptcy was filed against it, resulting in the appointment of petitioner, Kagan, as trustee. Aldrich had filed a demurrer and an answer with a counterclaim for the rent in the superior court on July 5, 1946. Its demurrer was sustained by the superior court on November 4, 1946, and Aldrich then asked the court to enter a final decree ordering the clerk to pay it the sum of $2,083.34, "being the sum heretofore paid into Court by the plaintiff on account of the rent due defendant for the premises described in the plaintiff's bill of complaint." Thereafter the trustee filed its "petition to avoid any lien by legal proceedings obtained by Aldrich Shoe Company;" upon which the order in question was entered.

The trustee's petition herein recited the facts; those controlling were admitted by Aldrich in its answer. The dispute is one of law. Upon the concessions of counsel, moreover, it was agreed that the referee could find as he did that the bankrupt was insolvent at the time of the first payment and continued so thereafter. Throughout the proceedings in the state court and in the court below, Aldrich continually insisted upon its claim to the deposits. Its position is succinctly set forth in its brief where it states its "contention that the title to the fund was vested in the Clerk of the Court for the benefit of Aldrich"; and in asserting that Aldrich had no lien, since "liens do not arise out of thin air," but "result from positive assertion of right by parties in action," it goes on to say, "But, nonetheless, a court of equity can force the transfer of title to property and to a sum of money, and such a change in the ownership of the title to the money was intended by the Superior Court." In line with this main contention it urges further that the particular issue is for the state superior court, not for the bankruptcy court.

The opposing claims are therefore that of equitable ownership upon the part of Aldrich and that of equitable lien dissolved by bankruptcy upon the part of the trustee. Since this is an issue of priority as to a fund paid to a third person by the bankrupt within four months of bankruptcy, it is for the federal, not the state, court. Clarke v. Larremore, 188 U.S. 486, 23 S.Ct. 363, 47 L.Ed. 555; Taylor v. Sternberg, 293 U.S. 470, 55 S.Ct. 260, 79 L.Ed. 599; Isaacs v. Hobbs Tie & Timber Co., 282 U.S. 734, 51 S.Ct. 270, 75 L.Ed. 645; Atlanta Flooring & Insulation Co. v. Russell, 5 Cir., 145 F.2d 493; Id., 5 Cir., 146 F.2d 884, certiorari denied Russell v. Atlanta Flooring & Insulation Co., 325 U.S. 862, 65 S.Ct. 1202, 89 L.Ed. 1983. But we do not see how the landlord can hope to win in any court. Of course, as it claims, the sums were ordered paid into the state court to cover the rental of the premises. Just as surely, however, that court was not prepared to decree ownership of it in Aldrich until the tenant's opposing claims of setoff were adjudicated. There has never been such an adjudication; and even the sustaining of the demurrer came after bankruptcy. Had the bankrupt made payment directly to the landlord, that would have been subject to attack as a voidable preference, Bankruptcy Act, § 60, subs. a, b, 11 U.S.C.A. § 96, subs. a, b. Aldrich makes no contention—and apparently there is no basis therefor—of any priority in Massachusetts for rent claims, and offers no basis for avoiding these difficulties on the merits. Here of course the payments were not thus direct; they went to an outside custodian to await further order of the court. They were merely funds of the bankrupt as to which the landlord's potential claims were never perfected.

The landlord's claim therefore comes down to one only of jurisdiction and procedure; but the trustee's particular choice of remedy to assert his right does not seem objectionable. He might have proceeded directly against the custodian of the funds. Clarke v. Larremore; Taylor v. Sternberg, both supra. But since Aldrich was so clearly the opponent, it was practical and direct, and on the whole more seemly, to proceed against it, if possible. Compare Atlanta Flooring & Insulation Co. v. Russell, supra. And we think the statute reaches the case. The liens which are dissolved by bankruptcy within four months and over which the bankruptcy court is

given summary jurisdiction include "every lien against the property of a person obtained by attachment, judgment, levy, or other legal or equitable process or proceedings." Bankruptcy Act, § 67, sub. a(1), 11 U.S.C.A. § 107, sub. a(1). Obviously, whatever interest Aldrich acquired in the deposit was by virtue of the equitable proceedings forcing the bankrupt to make the payment. Whatever their differences, the parties are agreed that the minimum claim is not less than that of equitable lien. That being so, it is hardly profitable to speculate as to whether or not there should be a difference for jurisdictional purposes under this statute between that bundle of equitable rights which may be termed a lien and the somewhat greater, but still incomplete, bundle of such rights which may be termed ownership.

Hence the only question under the statute can be the formal one that "lien" is here used in some common-law sense of possession of the bankrupt's property. But the statute itself here as elsewhere and by very definition goes beyond such a restricted notion and deals in reality with questions of priority in the bankrupt's property and estate. Indeed this is the view of the statute accepted in Massachusetts in a fairly analogous case dealing with money paid into court upon court order and treated as "security" for the benefit of the opposing party. Snyder v. Smith, 185 Mass. 58, 69 N.E. 1089, relying upon Metcalf Bros. & Co. v. Barker, 187 U.S. 165, 23 S.Ct. 67, 47 L.Ed. 122; and see also Davis v. Continental Realty Co., 320 Mass. 428, 430, 69 N.E.2d 671.[2] Jurisdiction then follows directly, since the 1938 amendment removes all question as to whether or not the opposing claim is more than colorable under the former rule of Taubel-Scott-Kitzmiller Co. v. Fox, 264 U.S. 426, 44 S.Ct. 396, 68 L.Ed. 770. See In re Rand Min. Co., D.C.S.D.Cal., 71 F.Supp. 724, 728, 729; Fischer v. Pauline Oil & Gas Co., 309 U.S. 294, 295, n. 11, 60 S.Ct. 535, 84 L.Ed. 764; 4 Collier on Bankruptcy, ¶ 67.18, p. 42, 14th Ed.1942. And cases such as Cline v. Kaplan, 323 U.S. 97, 65 S.Ct. 155, 89 L.Ed. 97, are not in point.

It should be noted further that any alternative conclusion leaves the creditor in even slighter position than does this. For on our view as developed above, it had at most a claim to the fund in the state court which might have been recognized had not bankruptcy prevented. If this does not rise to the dignity of an equitable lien, it leaves Aldrich with merely the status of a general creditor who is attempting to interfere with the trustee's duty to reduce the estate to possession by pressing unfounded contentions (bankruptcy-wise) in another court. Consequently the order appealed from then becomes justifiable under the general bankruptcy powers, including that to grant an injunction to prevent interference with the enforcement of the Act. Bankruptcy Act, § 2, sub. a(15), 11 U.S.C.A. § 11, sub. a(15); Boston Terminal Co. v. Mutual Savings Bank Group Committee, 1 Cir., 127 F.2d 707, 711; Atlanta Flooring & Insulation Co. v. Russell, supra; In re Sterling, 9 Cir., 125 F.2d 104.

The order of the District Court is affirmed.

---

[2] While "the mysterious equitable lien," the object of so many judicial excursions, will normally arise out of some act of agreement of the parties, there seems no reason why it may not be stimulated or authenticated, so to speak, by judicial order, which rests in part at least upon consent of the parties. And if, as Mr. Justice Holmes so well puts it, "the phrase 'equitable lien' may not carry the reasoning further or do much more than express the opinion of the court that the facts give a priority to the party said to have it," Sexton v. Kessler & Co., 225 U.S. 90, 98, 99, 32 S.Ct. 657, 659, 56 L.Ed. 995, it is fully descriptive here. See also Sammet v. Mayer, 2 Cir., 108 F.2d 337, 339.