**In re Philip R. COHN, Bankrupt.**

**Robert Y. MURRAY, Trustee, Plaintiff,**

v.

**David E. LYON, Defendant.**

**Bankruptcy No. 4-80-00014-G.**
**Adv. No. 4-80-0177-G.**

United States Bankruptcy Court,
D. Massachusetts.

Dec. 29, 1981.

James F. Queenan, Worcester, Mass., for plaintiff.

Paul S. Doherty, Springfield, Mass., for defendant.

### MEMORANDUM AND ORDER ON REQUEST FOR PRELIMINARY INJUNCTION

PAUL W. GLENNON, Bankruptcy Judge.

On October 30, 1980, the trustee in bankruptcy for the estate of Philip R. Cohn filed a complaint alleging that the bankrupt had loaned $396,828.07 to the defendant David

Lyon. By decision of this court on June 2, 1981, the trustee was granted an attachment on real estate of the defendant to the value of $396,828.07. 11 B.R. 611. In that decision, however, the court reserved judgment on whether the trustee should be entitled additionally to a preliminary injunction restraining the defendant from transferring any of his interest in various corporations, partnerships and trusts. After a second hearing before this court on September 9, 1981, in which testimony was had concerning the value of certain property subject to attachment, this court is of the opinion that the trustee's request for a preliminary injunction should be allowed in part and denied in part.

My original Memorandum and Order on this subject included a discussion of Massachusetts law on the subject of attachments. Pursuant to Rule 64 of the Federal Rules of Civil Procedure this court looked to the law of Massachusetts to conclude that there is a statutory right to attachment of real estate for the purpose of securing a judgment on a debt. Mass.R.Civ.Proc., Rule 4.1, M.G.L. C. 233, § 62. However, Massachusetts common law provides an additional remedy for an equitable attachment of other types of property by way of injunction against transfer. *McCarthy v. Rogers*, 295 Mass. 245, 3 N.E.2d 787 (1936). In addition, the relief of a preliminary injunction could only be granted where the plaintiff could show a reasonable likelihood that he will recover a judgment in excess of the total value of the property that is the subject of his two motions. *Anderson Foreign Motors, Inc. v. New England Toyota Distributor, Inc.*, 475 F.Supp. 973, 978 (D.Mass.1979).

The plaintiff's complaint in this case has been amended to seek a judgment of $588,050.05, rather than the original amount of $396,828.07. My comments regarding the sufficiency of the original complaint and the likelihood of recovery apply equally as well to the amended complaint, and therefore require no further discussion. Moreover, to the extent that the defendant renews his attempt to have certain prospective liabilities set-off against the amounts claimed by the trustee, I refuse to entertain such arguments since I feel the matter was properly addressed in the decision of June 2, 1981.

As such, it seems appropriate at this time, in lieu of the trustee's amended complaint, to increase the amount of the real estate attachment to the value of $588,050.05. The question presented for decision today is whether the real estate which is the subject of the attachment is of sufficient value to secure a recovery by the trustee, or whether additional security in the form of a preliminary injunction is warranted under the circumstances. In that regard, the court has reviewed the testimony of two witnesses with respect to the value of defendant's real estate in Springfield, Massachusetts, as well as testimony with respect to a 25% interest of the defendant in certain real property located in Marlboro, Massachusetts which is currently held in trust.

## FINDINGS

Since the question for decision is whether a preliminary injunction is warranted, we first must focus on the value of the defendant's real property which is subject to an attachment. The trustee's expert witness, a Mr. Avrom Mintz, testified that it is more likely than not that real property which is subject to a mortgage which is in excess of 50% of the property's fair market value will realize no more than the value of the mortgage at a forced sale of that property. The trustee's position is that because any recovery out of the property he might effect on the judgment would be by a forced sale, the court must look to liquidation value of the property in its decision on a preliminary injunction.

The defendant, contrarily, argues that fair market value is the standard which should be used. His testimony that the property is worth $2,700,000 is based upon his estimate of the replacement cost of the land and improvements thereon. The property in question is a commercial property in the city of Springfield, Massachusetts. The parcel contains almost 10 acres of commercially-zoned land, upon which is built a 5

acre warehouse containing 121,000 cubic feet of storage space. The property is leased to a large food chain, and the lease has a net income value of $183,000 per year to the defendant. The parcel was purchased by the defendant in 1967, in substantially the same condition it is now in, for $850,000. There are first and second mortgages on the property totalling $1,200,000. The defendant testified that the cost of building a warehouse of this type today would be no less than $20/sq. ft., giving the warehouse a replacement value of $2,420,000. In addition he testified that the cost of commercially-zoned land in a city such as this is approximately $30,000/acre, or between $270,000 to $300,000 for the entire parcel. Thus, his conclusion was that the fair market value of the property is equal to approximately $2,700,000.

The trustee suggests that the fair market value of this property, in the absence of any testimony as to comparable sales of similar property, should be based on the capitalization of income method rather than replacement cost. According to this method, depending upon how much of a return on capital is expected, the property's fair market value could be estimated to be between $1,525,000 (at a 12% rate of return) and $1,830,000 (at a 10% rate of return).

It is this court's experience that commercial property of this type generally appreciates between 8% and 10% per year. Since the property was purchased in 1967 for $850,000, this rather inaccurate form of valuation would place the current value of this property between $1,802,000 and $2,040,000, which comports more with the capitalization of income form of valuation than with the replacement cost value.

It is this court's finding that the unrebutted testimony of the trustee's expert witness supports a conclusion that the forced sale value of the Springfield property is equal to the value of the outstanding mortgage, namely $1,200,000. According to this method of valuation, the trustee would have no attachable interest in the property. However, if fair market value be used, it is the court's finding that the fair market value of this parcel is somewhere between $1.5 and $1.8 million, leaving the trustee with between $300,000 and $600,000 of attachable equity in the property. As we can see, if the higher of the two market values is used, the trustee's expected judgment would be more than adequately secured by the real estate. However, the lower of the two market values would leave an additional exposure of approximately $300,000.

Turning now to the Marlboro property which is held in trust, it is agreed that the property is currently undeveloped, residentially-zoned, and contains approximately 400 acres. There is a mortgage on the property in the amount of $525,000. The defendant has a 25% equitable interest in the trust. The trustee's witness testified again that it is more likely than not that where property is subject to a mortgage which is in excess of 50% of the fair market value of the property, the forced sale or liquidation value of that property will be the value of the mortgage, or $525,000 in this case. Mr. Mintz further testified that it was his experience that undeveloped, residentially-zoned property in this area generally sold for $1000 to $1500 per acre, which would give this property a fair market value of between $400,000 and $600,000, and leave little if any attachable equity for the trustee. Because of this fact, and the fact that the trustee sees little if any attachable value in the defendant's real estate, the trustee requests the court to grant an injunction as to other property interests of Mr. Lyon so as to insure a total recovery on any judgment he might obtain. The defendant, contrarily, argues that even if additional security other than the real estate attachment is warranted, such additional security should be limited to the defendant's interest in the Marlboro Trust.

It was the defendant's testimony that the fair market value of the Marlboro Trust property was $2,600,000. This valuation is based upon an offer of purchase of all of the property for that amount, which offer was conditioned upon the offeror obtaining a change from residential zoning to cluster zoning. Because no such change has oc-

curred and due to the fact that the purchase offer was in no way binding, the court dismisses this value as too speculative.

On the other hand certain facts emerged from Mr. Lyon's testimony which may give some indication of the property's true value. A total of 500 acres of land was purchased in 1974 for a price of $600,000 or $1200/acre. This would comport with Mr. Mintz's estimate of the fair market value of such property. In 1978, however, the trust sold 100 acres [1] of the 500 acre parcel for $260,000 or $2600/acre. The trustee argued that this property was roadfront property and more valuable as a result, but that sale nevertheless gives some indication of the comparable sale value of this real estate. If $2600/acre is used as a base value, and allowing for the trustee's observations to reduce the value by as much as 33%, the property would still have a value of at least $1750/acre or $700,000.

The court finds that the liquidation value of the Marlboro Trust property, according to the unrebutted testimony of the trustee's expert witness, is $525,000. As to the fair market value of the same property, the court finds the trustee's estimate to be too low in view of the fact that the property was purchased for $1200/acre almost seven years previously. Rather, the court, using the only comparable sale available to it, finds that the fair market value of the Marlboro Trust property is between $1750/acre to $2000/acre, for a total value of between $700,000 and $800,000. This finding would create an attachable equity in the property of between $175,000 and $375,000. However, since Mr. Lyon's equitable interest in the property is only 25% of the total value, the possible equity available for attachment is in fact between $43,750 and $93,750.

Finally, it has been agreed that of all the other business interests of the defendant, the only one which is of any value to the trustee is the defendant's ownership interest in the capital stock of O.P.M. Associates, Inc., which is agreed to be worth $150,000. All of the other property interests listed in the trustee's request for preliminary injunction are claimed to have no value for the purpose of securing a judgment.

## DISCUSSION

The trustee has cited to the court the case of *Matter of American Kitchen Foods, Inc.*, 2 B.C.D. 715 (D.Me.1976) as standing for the proposition that the proper standard of valuation to be used in this case depends upon what type of sale is commercially reasonable, under the circumstances. For instance, with respect to a real estate mortgage foreclosure, it was held that the controlling value was the sales price which the property would likely bring at the required public foreclosure sale, as distinguished from a private sale.

The *American Kitchen* case involved a question of relief from the automatic stay of lien enforcement in a Chapter XI proceeding under the Bankruptcy Act of 1898, as amended by the Chandler Act of 1938. In that case, then bankruptcy judge Conrad Cyr discussed at length the constitutional rights of secured parties to be protected from impairment of their secured position. In that effort, he discussed the method of valuation to be used in determining the value of a secured creditor's collateral.

There is conclusive authority to the effect that collateral is to be valued with reference to the amount recoverable from a "judicial sale" conducted pursuant to the provisions of local law [footnote omitted], which is not to say that the value is limited to the amount recoverable on a *forced sale*. While a forced-sale standard for appraising collateral may comport with the economic realities in ordinary bankruptcy [liquidation] proceedings, it may be altogether unsuitable in [other] circumstances ....

*Matter of American Kitchen Foods, Inc.*, at 720.

---

1. The defendant testified that "it was more like 80 acres", but the facts which appear from the record are that 500 acres were originally purchased and 400 acres remain. Since there is no indication of any other smaller sales, the 1978 sale must have involved "approximately 100 acres."

Judge Cyr went on to note the distinction between a forced-sale value and liquidation value in an attempt to clarify the nature of collateral disposition.

> It is misleading to describe the disposition of collateral as a "liquidation", except in the sense that it may accomplish a conversion of the collateral from an illiquid to a liquid state. "Liquidation" value in a collateral conversion context is not necessarily equatable with "forced sale" value . . . .
>
> *Matter of American Kitchen Foods, Inc.*, at 720.

Using the Uniform Commercial Code standard of commercial reasonableness of collateral disposition, and in an effort to make it applicable to Chapter XI real property dispositions, Judge Cyr concluded:

> The competitive chill generated by forced sales is notorious and relentless. Forced-sale valuations should be confined to use in cases where the circumstances of the debtor and the nature and condition of the collateral and its market-place leave no commercially reasonable alternatives.
>
> *Matter of American Kitchen Foods, Inc.*, at 721.

An example of Judge Cyr's concept may be found in the New Bankruptcy Code (11 U.S.C. §§ 101, et seq., as amended by the Bankruptcy Reform Act of 1978, Pub.L. 95–598), which is applicable in this case. Section 506(a) of the Code, which concerns the determination of a creditors' secured status by determining the extent of the *value* of the creditors interest in the collateral, provides this standard of valuation:

> Such value shall be determined in light of the purpose of the valuation and the proposed disposition or use of such property, and in conjunction with any hearing on such disposition or use or on a plan affecting such creditor's interest. 11 U.S.C. § 506(a).

Thus, it seems more than clear that Judge Cyr's decision, cited by the trustee as support for a conclusion that a forced-sale standard of valuation is appropriate here, is exactly to the opposite effect. Judge Cyr concluded that forced-sale standards should be avoided whenever a definite alternative standard appears to be available under the circumstances. Moreover, the Bankruptcy Code specifically rejects the automatic use of forced-sale standards of valuing a secured creditor's interest. Indeed, it is this court's experience that in the large majority of relief from stay decisions it is required to make, fair-market value is the predominant standard of valuation. This is so because generally the property subject to inquiry is either occupied, used in the debtor's business, or otherwise capable of being sold on a "going-concern" basis. On the other hand, forced-sale value is usually only used when the property is vacant, inoperative, or must otherwise be disposed of quickly and cheaply. Every attempt is made to give the debtor the full benefit of his equity in the property, so that he may retain it if necessary or dispose of it in a commercially reasonable manner and at a price that will benefit creditors as well as the debtor.

In the case at bar, we are not concerned with a creditor's proven secured rights in collateral, but rather with a form of security on an otherwise contingent claim that may be reduced to judgment. In addition, Mr. Lyon has asserted a potential liability for debts of the estate, which if eventually paid by him before the close of the bankruptcy estate, may entitle him to set-off those payments against any judgment the trustee might receive. Finally, the property in question, the Springfield warehouse, is subject to a valuable lease which enhances its value to any prospective purchaser. The property is used at all times and may be capable of generating a high yield at any private sale of the property. For all these reasons, it is the conclusion of the court that the Springfield warehouse property should be valued at its fair market price for purposes of determining whether additional equitable attachments are necessary to secure the trustee's potential judgment. That value, already determined to be between $1.5 million and $1.8 million, might not fully satisfy any judgment the trustee may recover.

For that reason the court is willing to grant the trustee's request for a preliminary injunction (equitable attachment) as to the defendant's 25% equitable share of the Marlboro Trust. Because the defendant's interest is in trust property, which may be sold by the trustee without affecting the defendant's rights in the trust, the court concludes that the Marlboro Trust property must also be valued at its fair market price. Using that standard, the trustee would receive an additional security valued at between $175,000 to $375,000, which should be sufficient to make up any deficiency that may exist in his real estate attachment. Therefore, the court concludes that any further extension of the preliminary injunction to additional property interests of the defendant is unnecessary, and denies the trustee's request to that extent. An order shall enter accordingly.