In the Matter of OMNI DEVELOPMENT
AND SERVICES INC., a Florida
corporation, Debtor.

OMNI DEVELOPMENT AND SERVICES
INC., Debtor-in-Possession, Plaintiff,

v.

SERVICIOS E. INVERSIONES SOLSAN,
S.A.; Sun Bank of Broward, N.A.; and
Harry E. Hall Construction Company,
Inc., Defendants.

Bankruptcy No. 82–02397–BKC–SMW.
Adv. No. 83–0359–BKC–SMW–A.

United States Bankruptcy Court,
S.D. Florida.

July 13, 1983.

Chad P. Pugatch, Fort Lauderdale, Fla.,
for debtor.

William Davell, Fort Lauderdale, Fla., for
Sun Bank.

B. Alan Dobbins, III, Fort Lauderdale,
Fla., for Hall.

David M. Rogero, Miami, Fla., for Servicios.

## FINDINGS OF FACT AND CONCLUSIONS OF LAW

SIDNEY M. WEAVER, Bankruptcy Judge.

THIS CAUSE having come on for Trial upon the Complaint to determine amount, validity, and priority of liens and to avoid preferential transfer filed by the Debtor-in-Possession, Omni Development & Services, Inc., (hereinafter "OMNI, INC."), against Defendants, SERVICIOS E. INVERSIONES, SOLSAN, S.A., (hereinafter "SERVICIOS"); SUN BANK OF BROWARD, N.A. (hereinafter "SUN BANK") and HARRY E. HALL CONSTRUCTION COMPANY, INC., (hereinafter "HARRY E. HALL"), as well as upon the counterclaim filed by SERVICIOS to establish an equitable lien or constructive trust upon the Debtor's property, and the Court having heard the testimony and examined the evidence presented; observed the candor and demeanor of the witnesses; considered the arguments of counsel; and being otherwise fully advised in the premises, does hereby make the following Findings of Fact and Conclusions of Law:

The Plaintiff, OMNI, INC., filed a Voluntary Petition under Chapter 11 of the Bankruptcy Code. At the time, the Debtor was the owner, in fee simple of residential pieces of real property located in Broward County, Florida. One parcel, a single-family home, was subject to a contract for sale at the time of the filing and has since been closed and sold, pursuant to order of this Court, which permitted the sale free and clear of liens, with all liens, excepting the lien of AmeriFirst Savings & Loan Association, the first mortgage holder, being transferred to the proceeds of sale. The AmeriFirst mortgage was assumed by the buyers. The balance of the proceeds of sale, a sum in excess of NINETY-NINE THOUSAND and no/100 DOLLARS ($99,000.00), is being held in escrow subject to this litigation. This property was legally described as follows:

Lot 1, in Block 6 of GOLF ESTATES, according to the Plat thereof recorded in Plat Book 43, Page 26 of the Public Records of Broward County, Florida

The remaining parcel of real property, a luxury duplex property, remains unsold at the time of this action. This property is legally described as follows:

Lot 12, of Block W of CORAL RIDGE COUNTRY CLUB ADDITION NO. 3, according to the Plat thereof recorded in Plat Book 52, Page 14, of the Public Records of Broward County, Florida

The Defendant, SERVICIOS, claims an equitable lien or constructive trust upon the properties by virtue of monies invested in another contemplated project known as "The Woodmont Project". SERVICIOS pledged a Certificate of Deposit in the amount of TWO HUNDRED THOUSAND and no/100 DOLLARS ($200,000.00) for use by the parent corporation of this Debtor, a corporation known as OMNI SERVICES AND DEVELOPMENT, S.A. (hereinafter "OMNI, S.A."). This corporation is also in Chapter 11 and was a holding company for the stock of OMNI, INC. All Agreements made by SERVICIOS were with OMNI, S.A., and not the Plaintiff in this proceeding, OMNI, INC.

Ultimately, after several renewals of the Certificate of Deposit, the funds pledged were utilized by OMNI, S.A. in repayment of loans and for other purposes. SERVICIOS contends its money was utilized in the construction of the homes which are the subject of this action. SERVICIOS attempted at trial to establish a chain showing where its monies had gone from the time of investment, and ultimately, into the subject real property; but SERVICIOS was unable to link its dollars invested directly to the real property which is the subject of this action. Further, the Court notes that all monies invested by SERVICIOS with OMNI, S.A. were on an unsecured basis. At no time did SERVICIOS bargain for a mortgage or lien in exchange for the monies loaned by it.

SERVICIOS filed a state court action and a lis pendens in that action, more than ninety (90) days preceding the filing of the Voluntary Petition herein. Its purported

lien rights arise under the Notice of Lis Pendens and state court proceeding to impress an equitable lien or constructive trust upon the property. This is also the basis for the counterclaim filed by SERVICIOS herein.

The Defendant, SUN BANK, obtained a Writ of Attachment against the real property and proceeds of sale thereof approximately three (3) weeks prior to the filing of the Voluntary Petition herein. The attachment lien was obtained by virtue of litigation instituted by SUN BANK against the Debtor and other Defendants, due to a loan which became in default over seven (7) months prior to the filing of the Debtor's Petition. The representative of SUN BANK admitted the antecedent nature of the obligation resulting in the attachment lien, which was solidly within the ninety (90) days preference period.

The Defendant, HARRY E. HALL, claims a lien upon or ownership interest in, the subject real property or proceeds of sale thereof by virtue of certain unrecorded Joint Venture Agreements entered into with the Debtor, OMNI, INC., and pertaining to the construction of the residences on the real property. The agreements, which were submitted in evidence, provide that title to the real property, although legally held in the name of OMNI, INC., is held for the benefit of the joint venture pursuant to the terms of the Joint Venture Agreements. These Agreements further provide for a division of certain profits resulting from the sale of real properties.

The Agreements were never recorded although Harry E. Hall recorded an Affidavit in the Public Records of Broward County, Florida where the real properties are located, referencing his interest in the property by virtue of the subject Agreements. This Affidavit was submitted into evidence as well.

■ Based upon the evidence presented at trial the Court finds and concludes that SERVICIOS is not entitled to a lien against the Debtor's real property or the proceeds of sale thereof. It is clear that the claim of SERVICIOS is a general unsecured claim not against the Plaintiff herein, but its parent corporation, OMNI, S.A. Despite its contentions, SERVICIOS was unable to prove that the monies it had invested with OMNI, S.A. were utilized by OMNI, INC. and incorporated into the subject real properties. This nexus was not established through the bank's records nor was it established through the Debtor's records.

■ In addition to the inability of SERVICIOS to meet its burden of proof to show that its funds went into the subject properties, SERVICIOS never bargained for a mortgage or lien to protect its interests. It would thus be inequitable to award SERVICIOS a lien and a priority over the other creditors herein when it never bargained for a lien in making its initial investment. An equitable lien will only arise where the intention to create such a charge clearly appears in the language and attendant circumstances of a transaction, and strict proof of such intention is required. *In Re: O.P.M. Leasing Services, Inc.*, 23 B.R. 104 (Bkrtcy.S.D.N.Y.1982). SERVICIOS has failed to meet this strict burden of proof.

Upon the same grounds, the counterclaim of SERVICIOS must fail.

The lien claim of SUN BANK is voidable by the Debtor as well, as it is a classic preference meeting all of the elements of 11 *U.S.C.* § 547(b).

■ The Court finds that the transfer was to or for the benefit of a Creditor as SUN BANK admits itself to be a Creditor of the Debtor at all times material hereto. SUN BANK claims that the attachment lien it received in state court within approximately three (3) weeks of the filing of the Voluntary Petition herein is a judicial lien and, therefore, not a transfer within the meaning of § 547. The taking of a judicial lien through state court attachment has long been considered a transfer voidable under the preference laws of the Bankruptcy Code, and its predecessor, the Bankruptcy Act. *See, Ex, Commercial Credit Co. v. Street*, 65 F.2d 102 (9 Cir.1933), *Walker v. Leach*, 158 F.2d 15 (10 Cir.1946), *Norberg v. Ryan*, 193 F.2d 407 (9 Cir.1951). *Yorke v.*

*Thomas Iseri Produce Co.,* 418 F.2d 811 (7 Cir.1969). *In Re: Maytag Sales & Service, Inc.,* 23 B.R. 384 (Bkrtcy.N.D.Ga.1982); *In Re: Burnham,* 12 B.R. 286 (Bkrtcy.N.D. Ga.,1981). *In Re: Rocky Mountain Ethanol Systems, Inc.,* 21 B.R. 707 (Bkrtcy.D.N.M. 1981).

The transfer was on account of an antecedent debt. The lien attached within the applicable ninety (90) days period preceding the filing of the Petition and cannot be denied to have occurred while the Debtor was insolvent as the provisions of 11 *U.S.C.* § 547(f) provide a presumption of insolvency within that ninety (90) day period.

And, finally, the evidence shows that the taking of the lien will enable SUN BANK to receive more than it would have received under a Chapter 7 liquidation. The proceeds presently in escrow, which exceed NINETY–NINE THOUSAND and no/100 DOLLARS ($99,000.00) would be more than sufficient to provide a recovery to the SUN BANK of one hundred percent (100%) on the dollar of its indebtedness. A comparison with the results to be obtained under Chapter 7 reveals that the properties having been subjected to foreclosure by Ameri-First at or about the time of the filing of the Petition were in jeopardy of foreclosure and sale which would result in no realization of equity to unsecured creditors. Even taking the circumstances at best, the total accumulated equity of the two pieces of real estate, by the testimony of the Debtor's principal, and by the Schedules, does not exceed THREE HUNDRED THOUSAND and no/100 DOLLARS ($300,000.00). This is to be measured against scheduled unsecured indebtedness of NINE HUNDRED THIRTEEN THOUSAND, SEVEN HUNDRED FOURTEEN and 69/100 DOLLARS ($913,714.69). Were the maximum equity in these properties realized under Chapter 7, the recovery to creditors would not exceed thirty cents ($.30) on the dollar.

All of the elements of 11 *U.S.C.* § 547(b) having been met, the SUN BANK lien should be voided and reduced to unsecured status.

The status of the HARRY E. HALL interest presents a different set of circumstances in that the documentation shows a clear intent to provide him with an equitable interest in the subject property. The Court's concern here is based on the Debtor-in-Possession's avoiding powers granted by 11 *U.S.C.* § 544(a). However, the Court finds and concludes that the Affidavit, prudently recorded by HARRY E. HALL, provided constructive notice and a duty of inquiry to a bona fide purchaser or lien creditor and thus, is sufficient to withstand the avoiding powers cited above. Accordingly, HARRY E. HALL is deemed to have an interest in the subject real property or proceeds thereof commensurate with the terms of the Joint Venture Agreements submitted into evidence. This interest, however, rather than constituting a lien upon the subject properties, is in the nature of an equitable interest in the fee simple title as specified therein.

A separate Final Judgment shall be entered in accordance with these Findings and Conclusions.