In re ANTINARELLI ENTERPRISES, INC. d/b/a Sound Advice, Debtor.

John F. CULLEN, Trustee of Antinarelli Enterprises, Inc., Plaintiff,

v.

E.I. DUPONT DENEMOURS & CO., INC. and Barry C. Klickstein, Esquire, Defendants.

Bankruptcy No. 84–1363–HL.
Adv. No. 84–395.

United States Bankruptcy Court, D. Massachusetts.

April 8, 1985.

John F. Cullen, Cullen & O'Connell, Boston, Mass., trustee.

Barry Braunstein, Riemer & Braunstein, Boston, Mass., for defendants, Dupont and Riemer & Braunstein.

Barry C. Klickstein, Forman, Roberts, Klickstein & Levy, Boston, Mass., pro se.

## MEMORANDUM ON PREFERENCE

HAROLD LAVIEN, Bankruptcy Judge.

Plaintiff/trustee filed his complaint on January 3, 1985, alleging a preferential transfer. Hearing was held on February 5, 1985 before the Bankruptcy Court. At that time, the parties agreed to stipulate to all material facts leaving but one issue for the Court to determine.

The trustee contends that the disbursements and assignments in question constitute preferential transfers within 90 days, pursuant to 11 U.S.C. § 547. Defendant, E.I. Dupont Denemours & Co., Inc., ("Dupont"), argues that the disbursements and assignments were made in satisfaction of a valid pre-bankruptcy lien acquired as a result of its action to reach and apply and to appoint a receiver, commencement of which was outside the 90-day preference period. 11 U.S.C. § 547(b)(4).

Accordingly, I find and rule as follows.

On October 22, 1984, an involuntary Petition for Relief Under Chapter 7 of the Bankruptcy Code was filed against Antinarelli Enterprises, ("Antinarelli").

Earlier, on July 26, 1983, Dupont brought suit against Antinarelli Enterprises in the District Court of Middlesex County (Civil Action No. 84–3784). On October 26, 1983, judgment was entered for the plaintiff in the amount of $49,442.40 in damages and $60.30 in costs. Antinarelli made partial payment in the amount of $7,500. The execution issued by the Court against Antinarelli Enterprises was delivered to the deputy sheriff for the County of Middlesex on November 17, 1983. He made a demand on Antinarelli Enterprises to satisfy the entire execution. The execution was returned unsatisfied on December 19, 1983.

On June 29, 1984, Dupont commenced an action in Equity in the Middlesex Superior Court, seeking to enforce its judgment by the appointment of a statutory receiver of Antinarelli and by reaching and applying in equity certain property interests of Antinarelli, which could not be reached to be attached or taken on execution in an action at law. An order appointing a receiver, Barry Klickstein, Esquire, was entered on July 27, 1984. Mr. Klickstein qualified as receiver by filing a bond on August 2, 1984. Between July 27, 1984 and October 9, 1984, Attorney Klickstein took possession of cash and American Express drafts due Antinarelli Enterprises in the sum total amount of $48,597.77. On October 9, 1985, Judge Abrams of the Superior Court allowed Attorney Klickstein's Motion to Discharge Receiver and Approve Disbursement of Funds.

Accordingly, Attorney Klickstein disbursed checks to Dupont in the amount of $19,682.23 on account of the judgment and $3,317.77 representing costs of suit and post judgment interest. In addition, Attorney Klickstein assigned American Express drafts in the amount of $18,597.77 to Dupont. These funds were delivered to Dupont's counsel, Henry Goldberg, Esquire, of Reimer & Braunstein, on or about December 21, 1984, in the modified sum of $17,563.67. In addition, Attorney Klick-

stein disbursed a check to Henry Goldberg, Esquire in the amount of $2,500.00 representing legal fees for professional services performed on behalf of Dupont and a check to himself for receiver's fees and expenses in the amount of $4,500.00. The total amount of disbursements amounted to $47,563.67.

■ It is generally accepted bankruptcy law that the fixing of a judicial lien upon the property of the debtor affected by a legal or equitable proceeding within 90-days of the filing of the petition for relief, constitutes a "transfer" voidable under the preference provisions of the Bankruptcy Code. 11 U.S.C. § 547; *In re Gray*, 41 B.R. 374 (Bankr.S.D.Ohio, 1984); *In re Omni Development & Services, Inc.*, 31 B.R. 482 (Bankr.S.D.Fla.1983); 4 *Collier on Bankruptcy*, P. 547.12.(1). The date of attachment of the judicial lien on the property of the debtor, as well as the nature, extent and validity of the lien, is to be determined by state law unless the application of state law would frustrate or debilitate federally enacted policy. *Butner v. United States*, 440 U.S. 48, 54–57, 99 S.Ct. 914, 917–919, 59 L.Ed.2d 136 (1979); *Cohen v. Wasserman*, 238 F.2d 683, 686 (1st Cir. 1956). *Kaufman v. Eastern Baking Co.*, 146 F.2d 826, 828–829 (1st Cir.1945). *In re Cohn*, 11 B.R. 611, 613, same case, 16 B.R. 140, 141 (Bankr.D.Mass.1981); *In re Cosmopolitan Aviation Corp.*, 34 B.R. 592, 595 (Bankr.E.D.N.Y.1983).

While the parties are in agreement on those general principles, they disagree on when state law creates the judicial lien in this proceeding. The matter would seem to be expressly determined by statute. Mass. Gen.Laws ch. 106, § 9–301(3) defines a "lien creditor" as a

creditor who has acquired a lien on the property involved by attachment, levy or the likes and includes an assigner for the benefit of creditors from the time of assignment, and a trustee in bankruptcy from the date of the filing of a petition or *a receiver in equity from the time of appointment.* (emphasis added)

Accordingly, any judicial lien or "transfer" at the earliest would date from the appointment of a receiver. In the case at bar, a receiver was not appointed until July 27, 1984, some 87 days prior to the filing of the bankruptcy petition. It is conceded that no injunction or restraining order was issued, so there may be a question of whether the appointment of a receiver is sufficient to create a lien against a trustee in bankruptcy.

■ Under Massachusetts law, neither the filing of a complaint seeking the appointment of a receiver nor the appointment of a receiver creates an equitable lien valid against a Bankruptcy trustee in the absence of an attachment or an injunction. *McCarthy v. Rogers*, 295 Mass. 245 (1936); *Wellman v. North*, 256 Mass. 496, 501 (1926); *Ellis v. Boston, Hartford and Erie Railroad*, 107 Mass. 1, 28 (1871); 31 *Mass. Prac.* (Nolan) Chapter 9, Section 168; *See also*, *Gay v. Ray*, 195 Mass. 8, 9, 80 N.E. 693 (1908); *Kaufman v. Eastern Baking Co.*, 146 F.2d 826 (1st Cir.1945); *Snyder v. Smith*, 185 Mass. 58, 60 (1904). *See, also*, Gilleran, *Massachusetts Prejudgment Security Devices*, 69 Mass.L.R. 156, 178 (1984) ("the mere appointment of a receiver gives the plaintiff no lien on the property of the defendant and therefore no security or priority in the sense of a right to payment from specific assets"); *Aldrich Shoe Co. v. Kagan*, 173 F.2d 457, 459 (1949) ("Liens do not arise out of thin air, but result from positive assertion of right by parties in action.")

■ The creditor contends that the mere filing of a bill to reach and apply is sufficient to create a lien regardless of injunctions or the appointment of receivers, based on an early case, *Rioux v. Cronin*, 222 Mass. 131, 109 N.E. 898 (1915). The mere statement of the proposition exposes its weakness. Could the mere filing, unserved and unacted upon, withstand constitutional challenge? See those cases that find statutes unconstitutional on due process grounds insofar as they deny defendants notice and hearing before prejudgment attachments by way of trustee pro-

cess are made. *Fuentes v. Shevin,* 407 U.S. 67, 92 S.Ct. 1983, 32 L.Ed.2d 556 (1972); *Sniadach v. Family Finance Corp.,* 395 U.S. 337, 89 S.Ct. 1820, 23 L.Ed.2d 349 (1969); *Schneider v. Margossian,* 349 F.Supp. 741 (D.Mass.1972); *Boland v. Essex County Bank and Trust Co.,* 361 F.Supp. 917 (D.Mass.1973); *Burger Chef Systems, Inc.,* 365 F.Supp. 1229 (S.D.N.Y.1973); *see also,* Mass.Gen.Laws ch. 236 § 4 (attachment becomes void forty days after attachment unless copy is deposited in the registry of deeds); Mass.Gen. Laws ch. 223 § 59 (thirty-day duration of attachment after judgment). Note that in this proceeding, the judgment was issued on October 26, 1983, the execution returned unsatisfied on December 19, 1983, and the Bill to Reach and Apply was not filed until June 29, 1984.

Moreover, the appointment of a receiver provides a creditor with leverage only to the extent that "appointment of a receiver divests the defendant of control of the property, restricts the sale of the property and installs the receiver as property manager." Gillerman, *Massachusetts Prejudgment Security Devices,* 69 Mass.L.R. 156, 178 (1984). Accordingly, the rights of *all parties* with an interest in the assets of the corporation or enterprise are determined and protected and no specific property is set aside for any one creditor. 31 Mass. Prac. (Nolan) Equitable Remedies, Chapter 9 §§ 162–168.

Defendant points to *Rioux v. Cronin,* 222 Mass. 131, 109 N.E. 898 (1915). There, the Court noted that:

If they are creditors' bills, these are the governing principles: The bringing of a suit by a judgment creditor, whose execution is unsatisfied, to reach and apply property of the debtor not susceptible of seizure at common law on the execution, is the commencement of a levy on

the execution. Resort to equity for the purpose of enforcing the collection of an execution was adverted to in *Parkhurst v. Almy,* [222 Mass.] 27 [109 N.E. 733 (1915)], as a well recognized branch of equity. It formed the basis of that decision.

*Id.* at 137, 109 N.E. 898. What breath was intended by that language must be severely limited by later constitutional, statutory, and case law. That case was decided prior to the enactment of Mass.Gen.Laws ch. 106, § 9–301(3) and other relevant changes in the law.

■ Finally, to utilize the date the complaint was filed as the date the defendant acquired a lien would be against all logic and "commercial reality." *O'Neill v. Nestle Libbys P.R., Inc.,* 729 F.2d 35, 37 (1984). When the defendant first filed its state court complaint, it had no assurance that any receiver would be appointed. Indeed, it had no assurance that, if a receiver was appointed, any money could be collected to satisfy the debts in question.[1] Accordingly, the Court finds that the creditor obtained its lien, if at all, no earlier than July 27, 1984, the date of the appointment of the receiver and some 87 days prior to the filing of the petition in bankruptcy. Judgment for the plaintiff/trustee.

---

1. It should be pointed out that the Court is not deciding that a lien valid against the trustee arose on the appointment of the receiver. It is not necessary to make such a determination in this case; however, the Court might well find that the defendant's lien arose after the date the receiver was appointed, i.e., the date he filed his bond, the dates on which he collected assets of the debtor, *see* 11 U.S.C. § 547(a)(3), or the date of the state court order regarding distribution. However, all these dates, including the date of the state court order appointing a receiver, fall within the 90-day preference period of 11 U.S.C. § 547.